# Exhibit A

**HOLLAND & KNIGHT LLP**
Matthew P. Vafidis (California Bar No.103578)
Aaron M. Cohn (California Bar No. 264756)
Shannon K. Little (California Bar No. 260342)
50 California Street, 28th Floor
San Francisco, California  94111
Telephone: (415) 743-6900
Facsimile:  (415) 743-6910
Email: matthew.vafidis@hklaw.com
       aaron.cohn@hklaw.com
       shannon.little@hklaw.com

*Pro Bono* Attorneys for Petitioner
**BELINDA K.**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| BELINDA K. and J.H. her minor son,<br><br>Petitioner,<br><br>vs.<br><br>YOLANDA BALDOVINOS, et al.,<br><br>Respondents. | Case No.  5:10-cv-02507-LHK<br><br>**FIRST AMENDED PETITION FOR RELIEF UNDER ICWA**<br><br>5 U.S.C. §1901 *et seq.* |

Petitioner BELINDA K. alleges as follows:

## STATEMENT OF THE CASE

1. This Amended Petition is brought to enforce procedural aspects of the Indian Child Welfare Act, 25 U.S.C. §§1901 *et seq*. (ICWA). ICWA provides certain rights and protections to children who are members of a federally recognized Indian tribe, and their parents, during state court proceedings for foster care placement and adoption of such children.  Alleging that these

- 1 -

1  procedural steps were not properly followed, this Petition seeks an Order from this Court to
2  invalidate the Alameda Superior Court's proceedings, case number HJ06005823, regarding
3  Petitioner, BELINDA K.'s minor son, J.H.

**PARTIES**

5  2. Petitioner, Belinda K., is the mother of J.H., who has been placed in foster and group
6  care situations since he became a dependent of Alameda Superior Court for dependency
7  proceedings that began in 2006, when J.H. was seven years old.  J.H. is an Indian Child, a
8  member of the federally recognized Cow Creek Band of the Umpqua Tribe of Indians, and
9  therefore the Indian Child Welfare Act, 25 U.S.C. §§1901 *et seq.* (ICWA).

10  3. Respondent Alameda County Social Services Agency (the "Agency"), through its
11  Children and Family Services Department, is a public agency within the County of Alameda,
12  California.  The Agency has initiated dependency proceedings and foster care placement for J.H.,
13  and has had custody of J.H. since December 2006.  The Agency has requested the various
14  actions taken by the Superior Court that are the subject of this Amended Petition, and is
15  responsible for adhering to the procedural requirements of ICWA discussed herein.

16  4. Respondent Yolanda Baldovinos is director of the Agency, and through her position
17  has responsibility for the Agency's adherence to the requirements of ICWA.

**JURISDICTION**

19  5. This Court has federal question subject matter jurisdiction over this matter pursuant to
20  43 U.S.C. §1331, as specifically affirmed in *Doe v. Mann* (2005) 415 F.3d 1038, 1047.  All
21  matters in this amended petition are governed by ICWA, 25 U.S.C. §1901 *et seq.* and relief
22  against the state court judgment is sought under 25 U.S.C. §1914.

23  6. This Court has personal jurisdiction over Respondents because they are present and
24  have been served in the state of California.

**VENUE**

26  7. Venue lies in the United States District Court for the Northern District of California
27  pursuant to 25 U.S.C. §1391(b), all Respondents reside in this judicial district and all events and
28  omissions giving rise to the claims in this amended petition occurred in this judicial district.

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8. Petitioner and J.H. are enrolled members of the federally recognized Cow Creek Band of the Umpqua Tribe of Indians.

9. The Agency first detained Petitioner's son on December 19, 2006, when he was seven years old.

10. On December 21, 2006, Petitioner and members of the extended family participated in a Team Decision Meeting (TDM) with representatives of the Agency. At the TDM, a plan (the "TDM Plan") was developed to "Return [J.H.] back to the care of his mother, Belinda. Recommend formal Family Maintenance."

11. Later on December 21, 2006, the Agency filed a Juvenile Dependency Petition in the Superior Court, alleging that J.H. was a child described by California Welfare and Institutions Code section 300, subsections (c) and (d).

14. On December 22, 2006, the Superior Court held a detention hearing pursuant to California Welfare and Institutions Code section 319. The court appointed Lezly Crowell to represent Petitioner. Ms. Crowell did not request a hearing for Petitioner.

12. On January 2, 2007, the day that a hearing on the case was scheduled, the Agency filed a Jurisdiction/Disposition Report (the "Jurisdiction Report"), recommending that "the minor be made a Court dependent and placed out of home. The mother is not in agreement with the recommendation." The Jurisdiction Report described the elementary school principal's investigation into the incident underlying the case, and statements and statements of an Agency social worker who did not write the report. Jurisdiction Report noted on page 7 that the principal had been away from the school on the day that the incident underlying the case occurred, and the principal asked questions to determine whether similar incidents had occurred previously. The Jurisdiction Report also stated on page 9 that a police investigation was ongoing, pending a medical examination of J.H., which the Agency had sought to have conducted. Regarding ICWA, the Jurisdiction Report stated on page 3 that, "The Indian Child Welfare Act does or may apply. The child(ren), [J.H.], is Indian child(ren) with the Umpqua tribe(s). The BIA has been contacted but no results have been made yet, as to finding and contacting the tribe."

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

13. Also on January 2, 2007, Petitioner appeared in court with her attorney. Petitioner did not have access to the partial police report nor to tapes of interviews with J.H. that had been conducted after his detention. At the hearing, following a conference in chambers at which Petitioner was not present, Ms. Crowell stated, "Your Honor, my client has, in the interest of justice and to speed us along, has agreed to submit to jurisdiction at this particular time." The Superior Court commissioner addressed himself to Petitioner, stating, "First of all, I'm happy to see that you are at least, to some degree, on board with the program. And I think, based on your attorney's comments in chambers, that you do recognize that [J.H.] does have some fairly serious issues that he has to deal with…So I do encourage…you, in your visits, to be strong, supportive of the process that's going on[.]"

14. The court began to make its findings that J.H. was a child described by California Welfare and Institutions Code section 300, when it asked, "Did Mom do a waiver? This is technically --" Ms. Crowell answered, "No," and the court determined to "recess a moment," while counsel was to get the waiver form. Ms. Crowell and Petitioner went into the hallway, where Ms. Crowell instructed Petitioner to initial boxes and sign the back of the Waiver of Rights -- Juvenile Dependency form in which Petitioner plead no contest to the Agency Petition and acknowledged the specific rights that were being waived. Ms. Crowell pressured Petitioner to sign the waiver quickly because people were waiting in court. Petitioner did not understand the contents of the waiver and instead assumed that her signature would enable J.H. to have counseling with a goal that he would return to her custody, consistent with the TDM Plan. Ms. Crowell did not sign the Declaration of Attorney stating that she had explained and discussed with her client the rights and consequences of pleading no contest.

15. The hearing resumed, and the court had the following exchange with Petitioner:

> The Court: Ms. [K.], I have here the waiver of rights which you have just initialed and signed and I want to go through that briefly with you. You understand that by initialing and signing this document that you are giving up a number of rights associated with your right to hearing? Do you understand that?
> The Mother: Uh-huh.
> The Court: You understand that, by this Court taking jurisdiction, that there are a number of consequences, possible consequences, and you've reviewed that section as well; is that correct?
> The Mother: Yes.

- 4 -

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

The Court: The Court does accept the waiver of rights by the mother, [Belinda K.]--thank you--and we will set this for a hearing--I'm sorry, for disposition on our uncontested calendar.

16. The court's minute order stated that Petitioner had submitted to the allegations and waived several rights, including the right to trial. "The submission is made freely and voluntarily. There is factual basis for the submission."

17. On April 5, 2007, following several continuances, the Superior Court held a Disposition Hearing pursuant to California Welfare and Institutions Code section 358.

18. In its Disposition Report, filed January 11, 2007for the originally scheduled January 26, 2007 hearing and a February 13, 2007 hearing, the Agency stated that ICWA does or may apply to the case. It stated that Rhonda Malone of the Cowcreek Band of the Umpqua Tribe had been contacted. The January 11, 2007 Disposition Report contained findings, including Finding 14 regarding ICWA placement preferences, as the statute establishes an order of preference if the child will be removed from the parent's home. The Agency did not check any of the boxes in Finding 14, regarding ICWA placement preferences, in its January 11, 2007 Disposition Report.

19. An updated Disposition Report, dated March 6, 2007, stated that the tribe had been notified of all matters in regards to the minor. With regards to placement, it noted that the tribal representative "reluctantly" agreed to a period of non-contact between Petitioner and J.H., enforced by the residential program where J.H. was living at that time. Regarding Finding 14, the March 6, 2007 report indicated that placement was with an institution approved by the Indian tribe, the lowest preference of the four placement options listed in the statute and the Finding. The March 6, 2007 Disposition Report noted that there were no criminal matters pending. Neither this report nor the January 11, 2007 Disposition Report discussed the results of the medical examination of J.H.

20. The January 11, 2007 Disposition Report listed several counseling efforts and evaluations that had just begun: Petitioner had begun the process of a psychological evaluation; J.H. had been sent for an evaluation at the California School for Professional Psychology; J.H. continued to see a doctor from Kaiser; and J.H. had been referred to Therapeutic Behavioral Services if he remained in foster care. The March 6, 2007 Disposition Report also listed several

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

ongoing counseling efforts: a psychological evaluation of J.H. was underway, although a full psychiatric assessment had not been completed; a psychological evaluation of Petitioner had been completed. The report notes that no family programs for Petitioner and J.H. had begun. Under a heading for "Reasonable Efforts," the report did not list any services as having been provided to the family.

21. At the Disposition hearing, Ms. Malone appeared and was called by the Agency to be its expert witness pursuant to ICWA. At the time of her testimony, Ms. Malone had spoken with a social worker for the Agency, and with Petitioner, and read the January 11, 2007 Disposition Report, which had been prepared for a January 22, 2007 hearing. She had not read the March 6, 2007 report. Ms. Malone stated that she understood the hearing was being held "to establish ICWA."

22. Ms. Malone stated that she believed it was in J.H.'s "best interest" not to be returned to Petitioner's home at that time. The Agency then explained the evidentiary standard under ICWA, requiring a showing that return of the Indian child to the parent would likely result in serious emotional or physical damage to the child, and asked whether, framed in that manner, Ms. Malone had an opinion. Ms. Malone said, "I would say possibly. I can't answer yes or no there because I'm not there in that area." Asked to assume the facts in the Petition were true, Ms. Malone again reached a conclusion based on the "best interests" of J.H. Finally, the commissioner explained the evidentiary standard to the witness, who finally stated that it would "cause emotional damage to return him home," basing her opinion on the facts in the Petition.

23. The Superior Court's minute order for the April 5, 2007 hearing adjudged J.H. a dependent of the Superior Court, and committed him to the care and custody of the Agency, for placement in a family home or institution. The Superior Court found that "reasonable efforts" had been made to prevent or eliminate the need to remove J.H. from his home, and that his placement with the Agency was "necessary and appropriate." The minute order found that ICWA applied to the case, but did not explicitly find that "active efforts" had been made to avoid the breakup of an Indian family. Instead it adopted findings from the March 6, 2007 Agency

- 6 -

First Amended Petition                                    USDC, N.D., Cal. Case 5:10-cv-02507-LHK

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

1 Disposition Report, which itself had made a finding that "active efforts" had been undertaken and 2 were unsuccessful.

3     24. Petitioner has continued to have six-month status review hearings at Alameda 4 County Superior Court. Until December 2007, she was represented by Ms. Crowell. On 5 December 13, 2007, Ms. Crowell withdrew as counsel for Petitioner and Cheryl Smith was 6 appointed to represent Petitioner. Ms. Smith moved to withdraw on May 27, 2010 and Dennis 7 Reid was appointed to represent Petitioner.  In June 8, 2010 and in October 2010, Mr. Reid 8 moved to be relieved of his appointment.

9     25. Throughout the Superior Court proceedings, Petitioner has requested that her 10 appointed attorneys file challenges to the proceedings, including state habeas petitions, as 11 ordered by this Court. Petitioner's attorneys have not filed anything on her behalf.

12     26. Family reunification services between Petitioner and J.H. were terminated on January 13 14, 2008, and the Superior Court at that time ordered a "specific goal of return home" as the 14 permanent plan.  On December 4, 2008, the permanent plan was modified to become the 15 "specific goal of a less restrictive foster setting."

16     27. On June 18, 2009, the specific goal was retained, but the permanent plan became 17 placement with the Davis facility.  J.H. resided at a group living facility in San Leandro, 18 California until he was moved to a "Level 14" group living facility in Davis, California, 19 sometime prior to the June 18, 2009 status review hearing.

20     28. In December 2009, Petitioner submitted a declaration to the court objecting to 21 statements in the Agency's status review report that had been submitted for the November 2009 22 status review.

23 //
24 //
25 //
26 //
27 //
28 //

- 7 -

First Amended Petition      USDC, N.D., Cal. Case 5:10-cv-02507-LHK

# COUNT I

## INADEQUATE NOTICE TO THE TRIBE

29. Petitioner hereby incorporates paragraphs 1 through 28.

30. Pursuant to 25 U.S.C. § 1912(a), prior to any involuntary proceeding in State court, the party seeking foster care placement of an Indian child shall notify the parent and the child's tribe of the pending proceedings via certified mail with return receipt requested, and no foster care placement proceeding shall be held until at least 10 days after the receipt of notice. The U.S. Bureau of Indian Affairs, *Guidelines for State Courts; Indian Child Custody Proceedings*, 44 Fed. Reg. 67584 (November 26, 1979), state that an original or a copy of each notice sent pursuant to this section shall be filed with the court together with any return receipts or other proof of service.

31. Under state law, the California state court has an independent duty to ensure that the notice is sufficient. See *In re H. A.* (2002) 103 Cal.App.4th 1206, 1211. This requirement is also imposed by California law, and there is an affirmative and continuing duty on the Agency to provide proper notice. Cal. Welf. & Inst. Code §§ 224.2, 224.3(c); Cal Rules of Court, Rule 5.481(a)(4). In addition, under Cal. Welf. & Inst. Code section 291(g), if the court knows or has reason to know that an Indian child is involved, notice must be given to the Tribe prior to the Jurisdictional Hearing.

32. As of January 2, 2007, J.H.'s Tribe had not been notified of the Agency's Petition, although the Agency's Jurisdictional Report provided the Superior Court with notice that J.H. was an Indian child. This was the hearing at which Petitioner submitted to the allegations of the Petition and waived her rights to a contested hearing. Although the Tribe was notified prior to the April 5, 2007 hearing, by that time the allegations in the Petition were found to be true.

33. Ms. Malone, the social services representative for the Tribe, received the Agency's Jurisdiction Report on January 17, 2007, five days prior to the originally scheduled Disposition Hearing, short of the notice period required by ICWA. Ms. Malone's testimony also indicates that as of April 5, 2007, she had not received the March 6, 2007 Agency report, which was an

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

1  updated Disposition Report and the report in which the Agency made findings regarding ICWA
2  compliance that were then adopted by the Superior Court.

3      34.  No certified copy of the notice to the Tribe, pursuant to 25 U.S.C. § 1912(a) and the
4  *Guidelines for State Courts; Indian Child Custody Proceedings*, has been provided to Petitioner.
5  To her knowledge, no such copy of the notice has been filed, nor does a copy of the notice
6  appear in the state court register of actions.

7      35.  At the Disposition Hearing on April 5, 2007, counsel for the Agency sought leave for
8  a 30-day extension to file notice with the Tribe, which was granted by the court. No subsequent
9  notice to the Tribe is known to Petitioner.

10      36.  As illustrated by the facts described above, the Agency failed to properly notify the
11  Tribe of which Petitioner and J.H. are members, as it was required to do by 25 U.S.C. §1912(a).

12      37. Wherefore, Petitioner prays that pursuant to its authority under 25 U.S.C. §1914, the
13  Court invalidate the foster care placement of J.H. based upon a showing that the placement
14  violated 25 U.S.C. §1912(a).

## COUNT II

### INEFFECTIVE ASSISTANCE OF APPOINTED COUNSEL

17      38.  Petitioner hereby incorporates paragraphs 1 through 37.

18      39.  Pursuant to 25 U.S.C. § 1912(b) and Cal. Welf. & Inst. Code §317, the indigent
19  parent of an Indian child has the right to court-appointed counsel in any removal, placement or
20  termination proceedings.

21      40.  Petitioner was appointed counsel at the initial detention hearing for J.H., on
22  December 22, 2006.  Prior to the Jurisdictional Hearing, held January 2, 2011, Lezly Crowell,
23  did not meet with or discuss the contents of the Agency's Juvenile Dependency Petition
24  ("Agency Petition") with Petitioner. Ms. Crowell did not conduct any investigation of the facts
25  alleged in the Petition, through which the Agency sought jurisdiction over J.H, which was based
26  upon the hearsay report of one individual and described statements by J.H. that had not been
27  repeated.  Ms. Crowell did not object to the contents of the Jurisdiction Report, including the
28  hearsay it contained.

- 9 -

First Amended Petition                                      USDC, N.D., Cal. Case 5:10-cv-02507-LHK

41. At the time of the Jurisdictional Hearing, the police investigation into the incident was ongoing, and a medical examination of J.H. was scheduled for that same day. The Agency Petition stated that J.H.'s Tribe had not been contacted. Ms. Crowell did not request any delay in the court's jurisdiction decision, in spite of the ongoing investigation and failure of the Agency to timely notify the Tribe, in violation of 25 U.S.C. §1912(a).

42. Ms. Crowell advised Petitioner to waive her right to a contested hearing and plead no contest to the contents of the Agency Petition without ensuring that Petitioner understood the consequences of the waiver and plea. At the Jurisdictional Hearing, Ms. Crowell pressured Petitioner to sign the waiver because people were waiting in the courtroom. Ms. Crowell did not sign the Declaration of Attorney stating that she had explained and discussed with her client the rights and consequences of pleading no contest.  Petitioner believed that by signing the waiver, she would be getting J.H. access to counseling, consistent with the TDM Plan.  Petitioner did not believe she could lose the right to raise her son.

43. At the April 5, 2007 Disposition hearing, Ms. Crowell presented no evidence -- such as results of the completed medical exam, the finalized police report, or further interviews with J.H. -- to the Superior Court.  Ms. Crowell did not object to any of the contents of the Agency's reports, including their reliance on hearsay.  Ms. Crowell only briefly cross-examined the Agency's expert witness. Nor did Ms. Crowell challenge the Agency's conclusion that Ms. Malone was sufficiently qualified as an expert witness.

44. At the April 5, 2007 Disposition hearing and at subsequent status hearings, Ms. Crowell failed to advise Petitioner of her rights under ICWA, including the right under 25 U.S.C. § 1913(b) that "[a]ny parent or Indian custodian may withdraw consent to a foster care placement under State law at any time, and upon such withdrawal, the child shall be returned to the parent or Indian custodian."

45. Petitioner's second appointed counsel, Cheryl Smith, represented Petitioner from December 13, 2007 until she moved to withdraw on May 27, 2010. Ms. Smith failed to advise Petitioner of her rights under ICWA to withdraw her consent to the foster care placement as permitted by 25 U.S.C. §§ 1913(b).

46. Ms. Smith also failed to challenge the recommendations of the Agency at the twelve month dependency status review hearing on January 14, 2008, at which family reunification services were terminated. Pursuant to California Welfare & Institutions Code §366.21(e), the burden before this hearing was on the Agency to justify the continued state custody of J.H., thus the presumption was in Petitioner's favor. Following this hearing, the burden shifted against returning J.H. to his family. Because of Ms. Smith's failure to challenge any Agency recommendations at the twelve-month review, Petitioner lost the benefit of the presumption.

47. Neither Ms. Smith nor Ms. Crowell advised the Superior Court or Petitioner regarding the ICWA requirements under 25 U.S.C. §1915(b) that "any child accepted for foster care…shall be placed in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met. The child shall also be placed within reasonable proximity to his or her home." J.H. currently resides in a highly restrictive group home in Davis, California, 80 miles from Petitioner's home. Petitioner has no vehicle and lives on a fixed income, and travel costs are considerable. The Agency's January 16, 2007 Disposition Report indicated that placement with J.H.'s older sister had been investigated, but nothing in the Agency's reports to the Superior Court indicates why this was not pursued, and the Superior Court did not inquire. Because neither Ms. Smith nor Ms. Crowell advised Petitioner about these placement preferences ICWA, Petitioner did not know of her rights to challenge the Agency's custody and placement of J.H. at stages following the Jurisdiction Hearing.

48. Neither Ms. Smith nor Ms. Crowell advised the Superior Court or Petitioner regarding the ICWA requirements under 25 U.S.C. §1916(b) that require that whenever a child is removed from a foster home for the purpose of further foster care, such placement must be in accordance with the provisions of ICWA. Pursuant to the U.S. Bureau of Indian Affairs, *Guidelines for State Courts; Indian Child Custody Proceedings*, 44 Fed. Reg. 67584 (November 26, 1979), this includes notice of the change in the Indian child's status to his parent that informs the parent of the right to petition for return of custody of the child. This notice to Petitioner was not provided when J.H. was moved from between institutions, when nor when reunification services were terminated, signaling a major turning point in the case, nor when the specific goal

- 11 -

First Amended Petition                          USDC, N.D., Cal. Case 5:10-cv-02507-LHK

of foster care was changed from "return home" to "a less restrictive foster care system." Because neither Ms. Smith nor Ms. Crowell advised Petitioner about these rights under ICWA, Petitioner did not know that challenge the Agency's custody of J.H. at stages following the Jurisdiction Hearing.

49. Neither of Petitioner's other court appointed attorneys have sought to challenge the ongoing proceedings under state law or habeas procedures, nor to have the custody determination invalidated for noncompliance with state or Federal ICWA procedures.

50. As a result of the facts and circumstances described above, Petitioner has been provided ineffective assistance of counsel, prejudicing Petitioner and violating her rights under 25 U.S.C. §1912(b).

51. Wherefore, Petitioner prays that pursuant to its authority under 25 U.S.C. §1914, the Court invalidate the foster care placement of J.H. based upon a showing that the placement violated 25 U.S.C. §1912(b).

## COUNT III
## DENIAL OF ACCESS TO REPORTS AND OTHER DOCUMENTS

52. Petitioner hereby incorporates paragraphs 1 through 51.

53. Pursuant to 25 U.S.C. § 1912(c), each party to a foster care placement proceeding under State law shall have the right to examine all reports or other documents filed with the court upon which any decision with respect to such action may be based.

54. The Agency filed its Jurisdiction Report on the very same day as the Jurisdiction Hearing, held January 2, 2007, at which Petitioner plead no contest to its contents and waived her hearing rights. The Petition sought removal of J.H. from the family home, a complete reversal of the TDM Plan which Petitioner previously understood to be the program for J.H.'s treatment. Petitioner was not provided adequate time to read and understand the Petition and to prepare any response or to investigate the alleged facts. Petitioner had no opportunity to discuss the contents of the Jurisdiction Report with her appointed counsel.

55. By filing the Jurisdiction Report on the same day as the Jurisdictional Hearing, the Agency deprived Petitioner of her ability to review the documents and reports on which the court's decisions were made, violating her rights under 25 U.S.C. §1912(c).

56. The Agency has routinely filed its reports to the Superior Court just prior to the hearing, leaving Petitioner with little-to-no time to review the reports or to challenge their contents.

57. Petitioner also was denied access to the police report and tapes or transcripts of interviews with J.H., elementary school principal's statement, and the medical exam until bringing this action.

58. Consequently, Petitioner has had inadequate opportunity to examine the reports and other documents filed with the court upon which the court's determinations were made, violating her rights under 25 U.S.C. §1912(c).

59. Wherefore, Petitioner prays that pursuant to its authority under 25 U.S.C. §1914, the Court invalidate the foster care placement of J.H. based upon a showing that the placement violated 25 U.S.C. §1912(c).

## COUNT IV

### INSUFFICIENT EFFORTS TO PREVENT BREAK UP THE FAMILY

60. Petitioner hereby incorporates paragraphs 1 through 59.

61. Pursuant to 25 U.S.C. § 1912(d), any party seeking foster care placement must "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have been unsuccessful." This standard is reiterated by Cal. Welf. & Inst. Code § 361.7 and Cal. Fam. Code §§ 3041(e) and 7892.5, and Cal Rules of Court, Rule 5.484(a).

62. The Agency's January 11, 2007 Disposition Report listed several counseling efforts that had just begun. The January 11, 2007 Disposition Report, filed just nine days after the Jurisdictional Hearing, recommended that J.H. be placed outside of Petitioner's home. Thus it appears that the failure of the "active efforts" was a foregone conclusion.

- 13 -

First Amended Petition                USDC, N.D., Cal. Case 5:10-cv-02507-LHK

63. The March 6, 2007 Disposition Report indicated that some counseling efforts were underway, but indicated that a full psychiatric evaluation of J.H. had yet to be made, and that no family programs had begun. Nothing in the April 5, 2007 hearing transcript suggests that the court made any further inquiries into the "active efforts" that had been undertaken, and that they had been unsuccessful.

64. The Agency's own documentation states that family counseling efforts had not begun and J.H.'s full psychiatric efforts had not been conducted and that his own counseling efforts had just begun. The Agency's reports also indicate that Petitioner had been cooperative with counseling and wanted counseling to continue. Thus, the Agency did not meet its burden to show the Superior Court that active efforts had been made, and that remedial and rehabilitative services were unsuccessful.

65. The County further failed to meet its burden prior to the January 14, 2008 hearing, at which reunification services were terminated, to show that "active efforts" had been taken to prevent the breakup of the family and that those efforts were not successful.

66. As a result of the facts and circumstances described above, the failure of "active efforts" to prevent the breakup of an Indian family, required by 25. U.S.C. §1912(d), have not been met, and Petitioner has been denied her rights under 25. U.S.C. §1912(d).

66. Wherefore, Petitioner prays that pursuant to its authority under 25 U.S.C. §1914, the Court invalidate the foster care placement of J.H. based upon a showing that the placement violated 25 U.S.C. §1912(d).

## COUNT V

## INSUFFICIENT EVIDENCE TO SUPPORT FINDINGS

67. Petitioner hereby incorporates paragraphs 1 through 66.

68. Pursuant to 25 U.S.C. § 1912(e), foster care placement orders must be supported by "clear and convincing evidence, including testimony of qualified expert witnesses, that continued custody of the child by the parent" is "likely to result in serious emotional or physical damage to the child." This standard is reiterated by Cal. Welf. & Inst. Code §§ 361.7(c) and 224.6(c), Cal. Fam. Code §§ 177(a), 3041(e) and 7892.5, and Cal Rules of Court, Rule 5.484(a).

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900

69. The Agency's expert testimony was provided by Ms. Malone, the Cow Creek Band of the Umpqua Tribe social services representative, who appeared by telephone at the April 5, 2007 Disposition Hearing.

70. Ms. Malone specifically stated that because she was not in the area, she could not respond to whether J.H. would be likely to suffer serious emotional damage if returned to his mother's custody. It was only after being told to assume that the Petition was true, that she reached such a conclusion. As discussed under Count II, above, Petitioner disputes the contents of the Petition, and signed the waiver form under the assumption she was agreeing to the TDM Plan and ongoing counseling. Because Ms. Malone's testimony was built on a faulty foundation, the improperly obtained waiver and unexamined Petition, Ms. Malone's testimony could not constitute clear and convincing evidence to meet the ICWA standards.

71. The Superior Court's decision was based on Ms. Malone's testimony and the four reports prepared by the Agency, and the Superior Court found that the ICWA evidentiary standards had been met. Ms. Malone did not respond directly to the evidentiary standard stated by the court. The remaining evidence supporting the court's determination -- the four Agency reports -- were repetitive and contradictory and based entirely on the principal's hearsay report of her conversation with J.H., several days after his incident at school occurred, and in which she asked myriad leading and confusing questions. This evidence does not support the Superior Court's findings. No contrary evidence was provided to the Superior Court.

72. Because Ms. Malone was not in the area, had not read the reports on which the Superior Court's findings were made, and apparently was unfamiliar with the standards applicable to ICWA cases, Ms. Malone was not sufficiently qualified as an expert witness.

73. Consequently, "clear and convincing evidence, including testimony of qualified expert witnesses, that continued custody of the child by the parent" is "likely to result in serious emotional or physical damage to the child," did not support the Superior Court's findings, violating her rights under 25 U.S.C. §1912(e).

74. Wherefore, Petitioner prays that pursuant to its authority under 25 U.S.C. §1914, the Court invalidate the foster care placement of J.H. based upon a showing that the placement violated 25 U.S.C. §1912(e).

## COUNT VI

## INVALID WAIVER

75. Petitioner hereby incorporates paragraphs 1 through 74.

76. Pursuant to 25 U.S.C. §1913(a), where a parent voluntarily consents to foster care placement, the consent is only valid if executed in writing and recorded before a judge, and supporting by the presiding judge's "certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent." This standard is reiterated by Cal. Welf. & Inst. Code §16507.4(b)(3). The U.S. Bureau of Indian Affairs, *Guidelines for State Courts; Indian Child Custody Proceedings*, 44 Fed. Reg. 67584 (November 26, 1979) further provide that any consent should be contained in a consent document that includes the name of the Indian child's Tribe and the name and address of the entity through which the foster placement was arranged.

77. By signing the Waiver of Rights -- Juvenile Dependency form during the momentary recess of the January 2, 2007 Jurisdictional Hearing, Petitioner waived her right to a contested hearing and submitted to the allegations in the Petition. No contested hearing has been held, and the facts of the Petition were assumed to be true at the Dispositional Hearing.

78. The commissioner's limited discussion with Petitioner after it recessed momentarily for her to sign the waiver, described above, does not demonstrate that the terms and consequences of this consent were fully explained in detail and were fully understood by Petitioner. The substance of the waiver was not discussed at all in the commissioner's colloquy with Petitioner. The Superior Court also did not ensure that Petitioner's counsel had also signed the waiver.

79. At the time that Petitioner signed the waiver, the details of J.H.'s Tribal membership were unknown, and the Tribe had not been contacted. Nothing on the waiver form provided the Tribe's name nor the name and address of the foster care entity.

80. Petitioner requested at a January 16, 2007 hearing that she wanted a contested hearing. Nevertheless, none was held and the Superior Court has continued to make its findings and orders based on the assumption that the contents of the Petition were true.

81. Consequently, the purported voluntary consent given by Petitioner did not reference her son's Tribal membership, and the court failed to certify that the terms and consequences of her consent were fully explained in detail and were fully understood by Petitioner, violating Petitioner's rights under 25 U.S.C. §1913(a).

82. Wherefore, Petitioner prays that pursuant to its authority under 25 U.S.C. §1914, the Court invalidate the foster care placement of J.H. based upon a showing that the placement violated 25 U.S.C. §1913(a).

## COUNT VII

## WITHDRAWAL OF CONSENT

83. Petitioner hereby incorporates 1 through 82.

84. Pursuant to 25 U.S.C. §1913(b), any parent may "withdraw consent to foster care placement under State law at any time and, upon such withdrawal, the child shall be returned to the parent[.]" This is implemented in state law through Cal. Welf. & Inst. Code § 16507.4(b)(3)(C).

85. As discussed above, Petitioner attempted to withdraw her waiver at a January 16, 2007 hearing, and requested a contested hearing that was never held. However, at the April 5, 2007 Disposition Hearing, Ms. Malone was instructed to assume that the contents of the Agency Petition were true.

86. Subsequently, Petitioner was never informed of her rights to withdraw her consent to the placement of J.H. in foster care, and her appointed counsel in the Superior Court proceedings have not presented any challenges to the Superior Court proceedings and the Agency's recommendations.

- 17 -

First Amended Petition                                          USDC, N.D., Cal. Case 5:10-cv-02507-LHK

87. Since the withdrawal of her most recent appointed counsel, Petitioner has been prevented from withdrawing her consent to the Agency's petition.

88. Consequently, Petitioner has been denied the ability to exercise her rights pursuant to 25 U.S.C. §1913(b).

89. Wherefore, Petitioner prays that pursuant to its authority under 25 U.S.C. §1914, the Court invalidate the foster care placement of J.H. based upon a showing that the placement violated 25 U.S.C. §1913(b).

## PRAYER FOR RELIEF

90. Petitioner hereby incorporates paragraphs 1 through 89.

91. This First Amended Petition is timely filed pursuant to Cal. Welf & Inst. Code § 385.

92. WHEREFORE, Petitioner prays:

That this Court invalidates the foster care placement of J.H., pursuant to 25 U.S.C. §1914 and based upon a finding that the placement violated 25 U.S.C. §§1912 and 1913.

That pursuant to its authority under 25 U.S.C. §1914, this Court orders the Alameda County Superior Court, pursuant to its obligations under 25 U.S.C. §1920, to decline jurisdiction over the Agency's petition and shall forthwith return J.H. to Petitioner.

For such other and further relief as the Court deems just and proper.

Dated:  February ___, 2011                     HOLLAND & KNIGHT, LLP


 /s/
Matthew P. Vafidis
Attorney for Petitioner BELINDA K.

Holland & Knight LLP
50 California Street, 28th Floor
San Francisco, CA 94111
Tel: (415) 743-6900