UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Belinda K. and J.H., her minor son, | )    Case No.: 10-CV-02507-LHK |
| Petitioners, | ) <br> )    ORDER DENYING PETITIONER'S |
| v. | )    MOTION FOR SUMMARY JUDGMENT <br> )    AND GRANTING RESPONDENTS' |
| YOLANDA BALDOVINOS, et al., | )    CROSS-MOTION FOR SUMMARY <br> )    JUDGMENT |
| Respondents. | ) <br> ) |
| | ) <br> ) |

Petitioner Belinda K. ("Petitioner"), mother of minor J.H., an Indian child as defined by the federal Indian Child Welfare Act, 25 U.S.C. § 1901 *et seq.* ("ICWA"), brings this petition pursuant to 25 U.S.C. § 1914, seeking to invalidate a previous state court child custody determination based on Respondents'[1] alleged failure to comply with certain statutory requirements under ICWA. Specifically, Petitioner seeks to invalidate three orders of the Superior Court for the County of Alameda, Juvenile Division (the "Juvenile Court"): the January 2, 2007 Order, declaring J.H. a dependent of the Juvenile Court ("Jurisdictional Order"); the April 5, 2007 Order, ordering an out-of-home placement for J.H. ("Disposition Order"); and the January 14, 2008 Order, terminating family reunification services ("Termination of Reunification Services Order"). Before the Court

---

[1] The only remaining Respondents in this action are the Alameda County Children and Family Services ("CFS" or the "Agency") and its former director, Yolanda Baldovinos (collectively "Respondents").

1

are Petitioner's and Respondents' cross-motions for summary judgment.[2]  The Court held a hearing on the cross-motions on November 8, 2011.  Having considered the parties' submissions and arguments and the relevant law, the Court DENIES Petitioner's motion for summary judgment and GRANTS Respondents' motion for summary judgment on all counts.

## I.   BACKGROUND

### A.  California Juvenile Dependency Proceedings

In California, dependency proceedings in the juvenile court are special proceedings governed by their own set of rules as set forth in the Welfare and Institutions Code.  *In re M.C.*, 199 Cal. App. 4th 784, 790 (2011) (citing *In re Chantal S.*, 13 Cal. 4th 196, 200 (1996)).  Section 300 of the Welfare & Institutions Code ("WIC") describes specific situations that will bring a child within the jurisdiction of the juvenile court for dependency proceedings.[3]  A dependency proceeding may be initiated when the Department of Child and Family Services ("CFS" or the "Agency") files a WIC § 300 petition.  Upon filing of a petition, the juvenile court holds a detention hearing to determine whether the child requires emergency removal from the home, followed shortly thereafter by a jurisdictional hearing to determine whether the allegations in the

---

[2] Respondents' Administrative Motion for Leave to File Oversized Brief (ECF No. 196) is GRANTED.

[3] For example, a child is within the jurisdiction of the juvenile court and may be declared a dependent child of the court if:

(a) [t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. . . .[;]

(b) [t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . .[;]

(c) [t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care. . . . [;]

(d) [t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, . . . by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse.

WIC § 300(a)-(d).

2

**United States District Court**
For the Northern District of California

1    petition that the child comes within the scope of WIC § 300 are true, in which case the child is

2    declared a dependent of the juvenile court.  WIC §§ 315, 334, 356; *see Cynthia D. v. Superior*

3    *Court*, 5 Cal. 4th 242, 248 (1993).  Jurisdictional findings must be supported by at least a

4    preponderance of the evidence.  WIC § 355(a); *Cynthia D.*, 5 Cal. 4th at 248.

5          If the court finds that it has jurisdiction over the child under WIC § 300, then it conducts a

6    disposition hearing to determine whether the child may remain in the home under court

7    supervision, which may involve "family maintenance services," or whether the child must be

8    removed from the home pursuant to WIC § 361(c), requiring "family reunification services" for

9    twelve months after the child enters foster care.[4]  *See* WIC §§ 358, 361.5(a)(1)(A), 362.  Before

10   determining the appropriate disposition for the child, the court must read and consider the "social

11   study of the child made by the social worker," which must include the individual child's case plan

12   developed pursuant to WIC § 16501.1.  *See* WIC §§ 358(b), 16501.1.  A child may be removed

13   from a custodial parent if the juvenile court finds clear and convincing evidence that "[t]here is or

14   would be a substantial danger to the physical health, safety, protection, or physical or emotional

15   well-being of the minor if the minor were returned home, and there are no reasonable means by

16   which the minor's physical health can be protected without removing the minor from the minor's

17   parent's or guardian's physical custody."  WIC § 361(c).

18         The juvenile court continues to monitor the family's progress on the case plan by holding

19   status review hearings every six months.  *See* WIC § 366(a)(1).  At these review hearings, the

20   statutory presumption that the child will be returned to parental custody may be overcome if the

21   agency shows, by a preponderance of the evidence, that "the return of the child to his or her parent

22   or legal guardian would create a substantial risk of detriment to the safety, protection, or physical

23   or emotional well-being of the child."  WIC § 366.21(e).  If by the twelve month review the court

24   does not return the child, and if the court further determines by clear and convincing evidence that

25   reasonable reunification services have been provided or offered to the parents but that there is no

26   _____

27   [4] A child shall be deemed to have entered foster care on the date of the jurisdictional hearing held
     pursuant to WIC § 356, or 60 days after his initial removal from his parent or guardian's physical
28   custody, whichever is earlier.  WIC § 361.49.

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

1    substantial probability of return within 18 months of removal, then WIC § 366.26 requires the

2    court to terminate reunification services and set the matter for a permanency hearing.  *See* WIC §§

3    366.21, 366.26.  At the "§ 366.26 hearing," the court selects and implements a permanent plan,

4    which may involve returning the child home, terminating parental rights, appointing a legal

5    guardianship, or ordering long term foster care placement.  *See* WIC § 366.26; *Cynthia D.*, 5 Cal.

6    4th at 249.

7                    **B.  The Indian Child Welfare Act**

8            Congress passed ICWA in 1978 in response to findings that "an alarmingly high percentage

9    of Indian families are broken up by the removal, often unwarranted, of their children from them by

10   nontribal public and private agencies and that an alarmingly high percentage of such children are

11   placed in non-Indian foster and adoptive homes and institutions."  25 U.S.C. § 1901(4).  ICWA

12   was enacted "to protect the best interests of Indian children and to promote the stability and

13   security of Indian tribes and families by the establishment of minimum Federal standards for the

14   removal of Indian children from their families and the placement of such children in foster or

15   adoptive homes which will reflect the unique values of Indian culture."  25 U.S.C. § 1902; *Miss.*

16   *Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32-36 (1989); *see also Navajo Nation v.*

17   *Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1044-45 (9th Cir.

18   2003).  At the heart of ICWA lies a jurisdictional scheme aimed at ensuring that Indian tribes have

19   a role in adjudicating and participating in child custody proceedings involving Indian children

20   domiciled both on and off the reservation.  *Holyfield*, 490 U.S. at 36.

21           ICWA provides, in relevant part, that an Indian tribe shall have exclusive jurisdiction over

22   any child custody proceeding involving an Indian child who resides or is domiciled within the

23   reservation of such tribe, except where jurisdiction is otherwise vested in the State by existing

24   Federal law.  25 U.S.C. § 1911(a).  If the Indian child is not domiciled on a reservation, the tribe

25   and the State of the child's residence or domicile share concurrent jurisdiction.  *Id.* § 1911(b).

26   Where, as here, the State exercises its concurrent jurisdiction over child custody proceedings

27   involving an Indian child, ICWA provides for a variety of procedural guarantees to ensure that the

28

**United States District Court**
For the Northern District of California

4

United States District Court
For the Northern District of California

Indian tribe is given adequate notice and opportunity to participate in those proceedings. *See id.* §

1912.

### C. J.H.'s Dependency Proceedings[5]

This action concerns J.H., an Indian child not domiciled on an Indian tribe reservation, who

was removed from his mother's custody on December 19, 2006 at the age of seven. J.H., now

twelve, currently remains a dependent child of the Alameda County Superior Court and lives in a

highly restrictive foster care group home.

J.H.'s initial removal was precipitated by his elementary school principal Geri Isaacson's

report to the police authorities that J.H. had disclosed ████████████████████████████

████████████████████ *See* Decl. of Geri Isaacson ISO Resp't MSJ ("Isaacson Decl.") ¶¶ 15-17.

Isaacson had received a report from a supervising teacher that ████████████████████████

████████████████████████████████████████████████████████████

Isaacson separately interviewed both J.H. and Student B. Student B reported ████████████

████████████████████████████████████████████████████████████████

████████████████ Isaacson Decl. ¶ 11 & Ex. A; Gormley Decl. ISO Resp't MSJ ("Gormley

Decl."), Ex. C (Police Report). On December 19, 2006, Isaacson interviewed J.H. in her office and

asked what he had to say about Student B's recounting of events. J.H. did not deny any of the

events but instead explained that J.H. had ████████████████████████████████████

████████████████████ According to Isaacson, J.H. explained, ████████████████████

---

[5] Respondents object to the following evidence offered by Petitioner in support of her motion for summary judgment: (1) a July 23, 2008 letter from Kaiser to Petitioner (Pet'r Decl. Ex. 4), based on hearsay and the fact that Respondents were denied discovery regarding the minor's medical records; (2) a September 25, 2006 progress note by Dr. Higgins (Pet'r Decl. Ex. 5), for the same reasons; (3) letter from Petitioner to "Your Honor" (Pet'r Decl. Ex. 19), based on failure to produce a responsive document per Federal Rule of Civil Procedure 37; (4) June 4, 2007 fax from Petitioner to Attorney Lezly Crowell (Pet'r Decl. Ex. 20), based on Rule 37; and (5) statements in paragraph 7 of Petitioner's Declaration, on grounds that they are inadmissible as conclusions of law or mere subjective belief. *See* ECF No. 205. For the reasons set forth in Petitioner's response, *see* ECF No. 209, the Court hereby OVERRULES Respondents' objections (1) through (4). However, because the statements in paragraph 7 of Petitioner's Declaration do not conform to Federal Rule of Evidence 701 governing opinion testimony by a lay witness, the Court SUSTAINS Respondents' objection (5).

5



**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10   Isaacson immediately called both Child

11 Protective Services and the San Leandro Police Department ("SLPD"), as she was required to do

12 by school district policy.[6]  Isaacson Decl. ¶ 16.

13        SLPD officers arrived and interviewed J.H. privately, outside the presence of Isaacson.  *Id.*

14 They also interviewed Katherine and Michael ▮▮▮▮▮▮, family friends who lived with J.H., his

15 mother, and Archie O.  The ▮▮▮▮▮▮ had arrived at the school to pick J.H. up.  Gormley Decl.

16 Ex. C.  The police investigators interviewed Katherine and Michael separately.  Although neither

17 of them believed that anyone at home was ▮▮▮▮▮ J.H., they both commented that they often

18 saw ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮  *Id.*  Michael explained that Archie O.▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Michael also reported that J.H. had

21 once ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Finally, Michael stated that Archie O. sometimes

22 takes J.H. with him to motorcycle functions, and Michael believed J.H. may have ▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.*

24

25 [6] Isaacson states that, as a mandated reporter, she has participated in annual, mandatory training on
26 the subject of child abuse and child abuse reporting for the past decade, which covers appropriate,
non-leading questioning techniques, warning signs and red flags regarding possible physical,
27 psychological or sexual abuse, and the general procedures to follow when child abuse is suspected.
Isaacson Decl. ¶ 3.

28

6

1    Based on the principal's report indicating immediate safety concerns for the minor, J.H.

2  was detained by the San Leandro Police Department and brought to the CFS Assessment Center,

3  where he was interviewed that same day by an Emergency Response Child Welfare Worker, Mary

4  Chew.  Decl. of Michelle Love ISO Resp't Opp'n to Pet'r MSJ ("Love Decl.") ¶¶ 1- 3.  In addition

5  to interviewing J.H., Chew visited J.H.'s home on December 19, 2006, and interviewed J.H.'s

6  mother; her boyfriend, Archie O. ████████████████ and Michael and Katherine ████████.

7  During the home visit, J.H.'s mother denied that anyone in the home ████████████████████

8  although she was aware of █████████████████████  Love Decl. Ex. A at 2.  The school

9  had informed her on previous occasions of J.H. ████████████████████████████████

10 ████████████████████████████████████  *Id.*  She also knew that J.H.

11 had ████████████████████████████████████████████████████

12 *Id.*  The mother confirmed that Archie O. ████████████████████████████████████

13 ████████████████████████  *Id.*  The mother further reported that all of

14 ████████████████████████████████████████████

15 ████████████████████████████████  *Id.* at 3.  Chew felt that

16 the mother did not show awareness that this behavior is not appropriate.  *Id.*

17    The mother reported her own extensive childhood ████████████████████

18 ████████ which took place in her mother's presence.  She stated that her mother had been aware of

19 ████████████████████████ but made no attempt to intervene or otherwise protect

20 her.  *Id.* at 2-3.  J.H.'s mother stated that she was currently in therapy to address her childhood

21 ████ but Chew had the impression, based on the interview, that there was no set therapy schedule

22 and that the mother had suppressed parts of her ████████████  *Id.* at 3.  Finally, the mother

23 reported that J.H. had stated ████████████████████████████████████████

24 ████████████████████ and that he had been in therapy since the age of three, when he was

25 traumatized by ████████████████████████████  *Id.*

26    Chew also arranged for J.H. to be interviewed by the Child Abuse Listening, Interviewing

27 and Coordination Center ("CALICO") the following day.  *Id.* ¶¶ 4-5 & Ex. A.  The CALICO

28

7

**United States District Court**
For the Northern District of California

1  interview was videotaped and observed by Chew.  *See* Gormley Decl. ISO Resp't Opp'n to Pet'r

2  MSJ ("Gormley Opp'n Decl."), Ex. A.  J.H. did not disclose to Chew or to the CALICO

3  interviewer that he was ████████████  Instead, when asked about what happened at school ██

4  ████████████████████  or about what he had told Ms. Isaacson happened in his home,

5  he repeatedly responded, "I don't want to talk about it," or "I don't remember," without offering

6  any further detail.  *See* Gormley Opp'n Decl. Ex. A at 30-31; Love Decl. Ex. A at 1, 3.

7       Based on these interviews, Chew produced an Investigation Narrative on December 20,

8  2006, in which she concluded that "[t]he mother may not have the ability to acknowledge if [J.H.]

9  is being ████████  Further, the mother may not have the ability to protect her son from

10  ████████  The mother clearly does not have ████████████████████

11  Love Decl. Ex. A at 3.  Pursuant to the Investigation Narrative, J.H. was placed in emergency

12  foster care pending his detention hearing, and his case was transferred to Dependency Investigator

13  Linda Fuchs, whose responsibility was to continue the investigation and determine whether there

14  existed sufficient grounds to file a Petition seeking to have J.H. declared a dependent of the

15  Juvenile Court pursuant to WIC § 300.  *See* Decl. of Linda Fuchs ISO Resp't MSJ ("Fuchs Decl.")

16  ¶¶ 3-4.

17       On December 21, 2006, Petitioner and the other members of her household participated in a

18  Team Decision Meeting ("TDM"), whose purpose was to create a safety or action plan for J.H.

19  "Fuchs Decl." ¶ 6.  Fuchs explained to Petitioner that in order for CFS to provide family

20  maintenance services to J.H. and his family, it was necessary for J.H. to be declared a dependent of

21  the court.  *Id.*  At the TDM, the family and the Agency agreed on a plan to "[r]eturn [J.H.] back to

22  the care of his mother" and to "[r]ecommend formal Family Maintenance."  Fuchs Decl. Ex. A.

23  The agreed-upon action steps in furtherance of this plan were for Fuchs to file a petition with the

24  Juvenile Court seeking to have J.H. declared a dependent of the Court, but recommending that the

25  Court maintain discretion to place J.H. in his mother's home, and for the mother to participate in

26  family counseling and individual counseling and to consider having the ████████████  move

27  out of the home.  *See* Fuchs Decl. ¶ 6 & Ex. A (TDM Agreement), Ex. B (Petition).  Fuchs filed a

28

8

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

1    Juvenile Dependency Petition ("Petition") with the Juvenile Court on December 21, 2006, seeking

2    to have J.H. declared a dependent of the court pursuant to WIC § 300 ███████████████████████

3    ███████████████████ and WIC § 300 ██████████████████████ Fuchs Decl. Ex. B.  The

4    Juvenile Court held a detention hearing on December 22, 2006, at which it appointed Attorney

5    Lezly Crowell ("Attorney Crowell") to represent Petitioner.  Based on a Detention Report prepared

6    by Fuchs, the Juvenile Court found there was probable cause to temporarily detain J.H. pursuant to

7    WIC § 319(a) pending the jurisdictional hearing, which the Court set for January 2, 2007.  *See*

8    Decl. of Belinda K. ISO Pet'r MSJ ("Pet'r Decl."), Ex. 14; Decl. of Aaron Cohn ISO Pet'r MSJ

9    ("Cohn Decl."), Ex. 6.

### 1.   January 2, 2007 Jurisdictional Order

11        The Juvenile Court held a jurisdictional hearing on January 2, 2007.  *See* Gormley Decl.

12   Ex. E (Transcript).  Petitioner was represented at this hearing by court-appointed attorney Lezly

13   Crowell, who informed the Juvenile Court that, "in the interest of justice and to speed us along,

14   [Petitioner] has agreed to submit to jurisdiction at this particular time."  *Id.* Ex. E at 2:1-3.

15        Fuchs prepared a Jurisdiction/Disposition Report for the January 2, 2007 jurisdictional

16   hearing, which was based, in part, on her review of the CALICO tape as well as several additional

17   interviews of Petitioner both at her home and at the Agency.  Fuchs Decl. ¶ 5 & Ex. C.  The

18   Agency's Jurisdiction/Disposition Report "recommended that the minor be made a Court

19   dependent and placed out of home" and noted that "[t]he mother is not in agreement with the

20   recommendation."  Pet'r Decl. Ex. 16 at 1.  Fuchs changed her recommendation from placement in

21   the mother's home, as had originally been discussed at the TDM, after learning the severity of

22   █████████████████████████████████████████████████████████████████████████

23   ███████████████.  Fuchs Decl. ¶ 8.  This new recommendation was also based in part on her direct

24   observation of the extent to which Petitioner denied that J.H. had been ██████ that ████████████

25   ██████████ represented a risk to his personal safety, and that her own ████████████████████

26   ████████████████████████ may be effecting her current situation.  *Id.*  The Report indicated that

27   ICWA does or may apply and that J.H. is an Indian child with the Umpqua Tribe.  Pet'r Decl. Ex.

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

16 at 3.  The Report also indicated that the Agency had made counseling and assessment referrals for J.H.'s family but that removal of the minor from the mother's home was still necessary because "J.H.'s ███████████████ has not been addressed"; "counseling needs for family work have not been scheduled"; and ███████████████ for the step-father has not been approved or arranged yet."  *Id.* Ex. 16 at 11.

        After reading and considering the Jurisdiction/Disposition Report prepared by Fuchs for the January 2, 2007 hearing, the Juvenile Court found that J.H. was a dependent child as described by WIC § 300█ and █ and that he should remain in foster care, and declared J.H. a dependent of the Juvenile Court.  *See* Gormley Decl. Ex. E at 5; Cohn Decl. Ex. 9.  The court then briefly recessed while Attorney Crowell took Petitioner out to the hall and had her sign a "Waiver of Rights," Judicial Council of California Form JV-190, wherein she pleaded no contest to the allegations in the petition.  *See* Gormley Decl. Ex. D.  Petitioner initialed that she understood that by pleading no contest, she was giving up the following rights: the right to a trial or hearing; the right to see and hear witnesses who testify; the right to cross-examine witnesses, the social worker or probation officer who prepared the report, and the persons whose statements are contained in the report; the right to testify in her own behalf and to present her own evidence and witnesses; and the right to use the authority of the court to subpoena witnesses or compel production of evidence.  *Id.*  She further initialed that she understood that by pleading no contest, "the court will probably find that the petition is true" and that "if the petition is found to be true and the child is declared a dependent of the court, the court may assume custody of the child, and under certain circumstances, it is possible that no reunification services will be offered or provided."  *Id.*  Petitioner alleges, however, that she did not understand what rights she was waiving and that her attorney did not explain the waiver form to her, instead rushing her to initial the form because the Court was waiting for her.  Pet'r Decl. ¶ 10(f).  Petitioner further claims she did not meet Attorney Crowell until minutes before the hearing began, and that Attorney Crowell handed her the custody petition just before she walked into the hearing, leaving her no time to read the petition.  Petitioner also points out that Attorney Crowell did not sign the portion of the Waiver of Rights indicating that she

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

had explained and discussed with her client the rights and consequences of pleading no contest. *See* Gormley Decl. Ex. D at 2; RJN Ex. 5.

### 2. April 5, 2007 Disposition Order

Fuchs filed her Disposition Report with the Juvenile Court on January 11, 2007.  Gormley Decl. Ex. F (Disposition Report).  The Disposition Report noted that J.H. remained in foster care and had ███████████████████████████ *Id.* Ex. F at 6.  The Report also noted that several counseling components had just begun: the mother had started seeing Aliyeh Kohbod for a psychological evaluation; J.H. was being evaluated at the California School for Professional Psychology and continued to receive counseling at Kaiser; Archie O. had been referred to Pacific Forensic Psychology Associates for a ███████████████ and a referral had been made for Therapeutic Behavioral Services for J.H. if he remained in foster care.  *Id.*  In addition, the Report noted that the Agency was still awaiting clearance for J.H.'s half-sister and her boyfriend as a possible placement option, though the Report noted that the two of them were generally away from home from 7 a.m. to 5 p.m. daily.  *Id.* Ex. F at 7; *see also* Fuchs Decl. ¶ 15. The Agency recognized that whether J.H. had been ████████████████ remained a question, but nonetheless recommended an out-of-home placement based on both WIC § 300 ███████ ███████████████████ and § 300 ████████████████████████████████ ████████████████████████████████ *See* Gormley Decl. Ex. F at 7, 9.  The Report noted that ICWA applies to this case and that "[a]ctive efforts have been made to provide remedial services and rehabilitative programs to prevent the breakup of the Indian family" but that "these efforts were unsuccessful."  *Id.* Ex. F at 10.

The Juvenile Court held a disposition hearing on January 16, 2007, at which Petitioner was represented by Attorney Crowell, but the Court continued the hearing "for purposes of providing proper notice pursuant to the Indian Child Welfare Act."  Gormley Decl. Ex. H at 1.  The only matter discussed at the January 16, 2007 hearing was Petitioner's request for a contested hearing date "because she wants her child back in her home."  *Id.*  Attorney Crowell represented to the Court, on Petitioner's behalf, that "my client is contesting this whole recommendation;" that

11

**United States District Court**
For the Northern District of California

1   "she's very upset that nobody has done anything with regards to getting [J.H.'s] medical attention

2   taken care of;" and "therefore, she wants a contested hearing." *Id.* Ex. H at 1-2.  The contested

3   disposition hearing was set for February 13, 2007, to allow for a tribal representative to be present,

4   and subsequently continued to April 5, 2007.  On January 24, 2007, Rhonda Malone, the tribal

5   representative for the Cow Creek Band of the Umpqua Tribe sent a letter to Linda Fuchs

6   confirming that J.H. was a member of the Cow Creek Band of the Umpqua Tribe of Indians.  *See*

7   Cohn Decl. ISO Pet'r MSJ ("Cohn Decl."), Ex. 11.

8              At the April 5, 2007 disposition hearing, the Agency called as its expert witness Rhonda

9   Malone, the tribal representative for the Cow Creek Band of the Umpqua Tribe, pursuant to ICWA

10  § 1912(e).  Gormley Decl. Ex. J at 2-3.  Malone was the sole witness and was cross-examined by

11  Attorney Crowell.  *Id.* Ex. J at 11.  Malone testified based on her contact with Petitioner and Linda

12  Fuchs, the case worker, and on her review of various documents, including the January 2, 2007

13  Jurisdiction/Disposition Report.  *Id.* Ex. J at 4.  When asked whether she had "formed an opinion

14  as to whether or not continued custody with the mother at this time is likely to cause ████████

15  ███████████████████████  Malone responded, "I think that it's in [his] best

16  interest to stay in state care until the issues at hand can be settled, they can really get to the bottom

17  of what's really happening with that child . . . before he's returned home."  *Id.* Ex. J at 6.  The

18  Agency's counsel clarified for Ms. Malone that because J.H. is an Indian child, ICWA standards

19  applied, and therefore "[t]he legal standard upon which we need your input is whether there's clear

20  and convincing evidence that continued custody with the mother is likely to cause serious

21  emotional or physical damage to [J.H.]."  *Id.* Ex. J at 6-7.  When Malone again stated that she

22  thought it was in J.H.'s "best interest" not to be returned to his mother's home at that time, the

23  Agency's counsel pressed, "is he likely to [be] . . . at risk of serious ███████████ if he remains

24  at home at this time?," to which Malone responded, "I would say possibly.  I can't answer yes or

25  no there because I'm not there in that area, but if I look at him, the charges—not the charges, but

26  the circumstances surrounding that and the people living in the home and not knowing where the

27  situations arose from, it would probably be in his best interest to not go home."  *Id.* Ex. J at 7.  At

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  that point, the Agency's counsel asked Malone to "assume that this Court has found that [J.H.] has

2  been ██████████ or there's a substantial risk that he will be ██████████ by a member of

3  his household and that the basis, factually, for that is, on or about December 19th, he told his []

4  school principal ██████████████████████████

5  ██████████," and to "assume that the mother, for whatever reason, did not protect [J.H.]

6  adequately from ██████████ when she reasonably should have known that he ██████████

7  ██████████" *Id.* Ex. J at 7-8.  Assuming those findings of the court, Malone answered, "Yes.

8  Then I would say it would be against his best interest to be returned home because of future

9  possible ██████████████████████ *Id.* at 8.  Malone also stated that the tribe

10  had no objection to J.H.'s current placement.  *Id.* at 9.

11       Finally, the court stepped in and asked Malone for clarification, emphasizing that the

12  "critical issue" was whether J.H. "should be going home or not.  And unless I have clear and

13  convincing evidence that [J.H.] would be likely to suffer emotional damage if he were returned

14  home, if I cannot find that clear and convincing evidence based on what you are telling me, I will

15  have to return him home." *Id.* Ex. J at 9-10.  Malone replied, "I don't believe he should be

16  returned home.  I think there's still more work to be done here to get to the bottom of the issue with

17  the child and his safety. . . . I believe it would cause emotional damage to return him home." *Id.*

18  Ex. J at 10.  Malone based her opinion on the documents that had been sent to her regarding the

19  case, specifically "[t]he facts that are in the paperwork about [J.H.'s] comments to his principal and

20  ██████████████████████████ those things, the

21  circumstances regarding the protective custody, and the allegations ██████████ *Id.* Ex. J

22  at 10-11.

23       The Juvenile Court concluded that J.H. should remain a dependent child of the Juvenile

24  Court with out-of-home placement, and ordered family reunification services for Petitioner.

25  Gormley Decl. Ex. J at 18-23.  The Juvenile Court adopted the findings and recommendations of

26  the March 6, 2007 Disposition Report, which included, *inter alia*, a finding of "clear and

27  convincing evidence that [J.H.] must be removed from the physical custody of the [mother] . . .

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

[because] [l]eaving or returning [J.H.] home would cause a substantial danger to the physical health, safety, protection, or physical or emotional well-being of [J.H.] and there are no reasonable alternative means to protect [J.H.]. Pet'r Decl. Ex. 7 at 10; *see* WIC § 361(c) (authorizing foster care placement of a child based on such a finding). The March 6, 2007 Disposition Report also indicated the ICWA placement preference as being "with an institution for children approved by an Indian tribe . . . which has a program suitable to meet the Indian child's needs." Pet'r Dec. Ex. 7 at 10-14.

### 3. January 14, 2008 Termination of Family Reunification Services

J.H.'s placement has been reviewed by the Juvenile Court approximately every six months since his initial placement, in accordance with the state regulations. On July 3, 2007, the Juvenile Court held what was scheduled to be a contested six month status review regarding J.H.'s continued out-of-home placement, but counsel for the Agency and Attorney Crowell, on behalf of Petitioner, informed the court that they had reached an agreement whereby (1) Petitioner would be granted additional visitation after consultation with J.H.'s primary therapist; and (2) Archie O. would also be incorporated into the family therapy and allowed supervised visits. *See* Gormley Decl. Ex. N at 1-2. On December 13, 2007, Petitioner made a *Marsden* motion to disqualify Attorney Crowell as counsel. After Petitioner's *Marsden* motion was denied, Attorney Crowell withdrew from representation. Attorney Cheryl Smith was appointed by the Court to represent Petitioner, and the twelve month status review hearing was continued to January 14, 2008. *See* Gormley Decl. Ex. O.

On January 14, 2008, the Juvenile Court held the twelve month status review, at which Petitioner was represented by Attorney Smith. The Agency submitted a Status Report, dated December 13, 2007, recommending that family reunification services to Petitioner be terminated and that J.H. be placed permanently out of the home in the Permanent Youth Connections Program. Gormley Decl. Ex. K at 1. On October 22, 2007, J.H. was transferred from the Elite Family Systems Group Home in Ceres, where he had been placed since February 8, 2007, to the Seneca Center 90-day assessment program at the Los Reyes house in San Leandro as a result of ███████████

14

█████████████████████████████████████████████████████  *Id.* Ex. K at 16.  The Status Report noted that the mother continued to live with Archie O., although the other couple living with them had moved out.  The Agency reported that Petitioner continued to deny the allegations ████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████  *Id.* Ex. K at 6.  Although Petitioner had been consistently seeing her therapist for individual sessions since August 2007, her therapist reported to the Agency case worker that "the mother may be minimizing [J.H.'s] ████████████████ ████████████████████████" *Id.* Ex. K at 6.  The Status Report concluded that "[i]t is clear by the minor's ███████████████████████████████████████████ ████████████████████████████████████████████," as reported by Seneca Center staff.  *Id.* Ex. K at 20.  Based on the findings contained in the Status Report, the Juvenile Court approved the Agency's recommendation of a planned permanent living arrangement with Seneca Center, with a specific goal of placement in a less restrictive setting.  The Juvenile Court adopted the Agency's findings and orders, including its finding that "[e]xpert testimony has established that [J.H.] has[] extraordinary physical or emotional needs that could not be met by following the ICWA preferences."  *Id.* Ex. K at 20; Gormley Decl. Ex. Q at 2.  The Juvenile Court terminated parental reunification services.  Gormley Decl. Ex. K at 22; Gormley Decl. Ex. Q at 2.  However, pursuant to a negotiated settlement agreement, a visitation schedule was established, and continued family therapy was offered.  Gormley Decl. Ex. Q at 2.

Since the January 14, 2008 Order terminating family reunification services, the Juvenile Court has continued to hold regularly scheduled status review hearings.  The record shows that Petitioner was represented by court appointed counsel at each of these status review hearings at least up until the time she filed this action.  Petitioner's parental rights have not been terminated.

**D.  Procedural History**

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Petitioner, proceeding *pro se*, brought this petition on June 7, 2010, pursuant to 25 U.S.C. § 1914, seeking review of the state child custody proceedings involving J.H.[7]  Alleging violation of numerous ICWA procedural requirements, Petitioner seeks to invalidate three actions of the Juvenile Court: (1) the January 2, 2007 Jurisdictional Order finding J.H. a dependent child of the court, pursuant to California Welfare and Institutions Code § 300█ and █; (2) the April 5, 2007 Disposition Order removing J.H. from Petitioner's custody and committing J.H. to the care, custody, and control of the County of Alameda Social Services Agency for suitable placement; and (3) the January 14, 2008 order terminating family reunification services.

On September 21, 2010, the Court issued an order denying Respondents' motion to dismiss, in part; remanding, in part; and dismissing certain respondents.

## II.    LEGAL STANDARDS

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided

---

[7] Petitioner also sought to remove the ongoing status review proceedings of J.H.'s placement from the Superior Court pursuant to 28 U.S.C. §§ 1443 and 1441, and sought a writ of habeas corpus under 28 U.S.C. § 2254 on behalf of her son.  Judge Breyer (to whom this matter was formerly assigned) dismissed the habeas petition on June 24, 2010.  In a separate order dated September 21, 2010, this Court granted County Respondents' Motion to Remand the ongoing status review matter regarding J.H. to the Superior Court.  Thus, all that remains before the Court now is Petitioner's claim under ICWA § 1914.

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at

2   250.

3   **III. DISCUSSION**

4       **A. Timeliness of Petition**

5       Respondents first move for summary judgment on the ground that all of Petitioner's claims

6   are barred by the applicable statute of limitations.[8]  Petitioner's claims are brought under ICWA §

7   1914, which provides that:

8           [a]ny Indian child who is the subject of any action for foster care placement or
9           termination of parental rights under State law, any parent or Indian custodian from
            whose custody such child was removed, and the Indian child's tribe may petition
10          any court of competent jurisdiction to invalidate such action upon a showing that
            such action violated any provision of sections 1911, 1912, and 1913 of this title.

11  25 U.S.C. § 1914.  Section 1914 itself contains no express time limits, and ICWA as a whole lacks

12  any generally applicable statute of limitations.[9]  *In re Adoption of Erin G.*, 140 P.3d 886, 889

13  (Alaska 2006).

14      The absence of a general statute of limitations is "a void which is commonplace in federal

15  statutory law."  *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980)

16  (holding that plaintiff's 42 U.S.C. § 1983 claim was subject to New York's applicable statute of

17  limitations).  In the absence of a congressionally specified time limitation for a federal cause of

18  action, "[c]ourts must adopt a limitations period from analogous state law unless federal law

19  'clearly provides a closer analogy than available state statutes, and . . . the federal policies at stake

20  and the practicalities of litigation make that rule a significantly more appropriate vehicle for

21  interstitial lawmaking.'"  *DirecTV, Inc. v. Webb*, 545 F.3d 837, 847 (9th Cir. 2008) (quoting

22  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 356 (1991)); *see Wilson v.*

23  _____

24  [8] The Court previously declined to dismiss Petitioner's ICWA claims as being time-barred,
    observing that "[i]t appears to be a matter of first impression what statute of limitations, if any,
25  should apply to Petitioner's ICWA claims and when this time should start running."  Order
    Denying Motion to Dismiss in Part, Remanding in Part, and Dismissing Certain Respondents
26  ("Order Denying-in-Part MTD"), Sept. 21, 2010, ECF No. 55 at 4.
27  [9] ICWA does impose a minimum limitations period of two years, unless otherwise permitted under
    State law, for actions challenging the voluntary relinquishment of parental rights based on fraud or
28  duress.  *See* 25 U.S.C. § 1913(d).  Petitioner does not move under § 1913(d).

17

**United States District Court**
For the Northern District of California

1  *Garcia*, 471 U.S. 261, 266-67 (1985), *superceded by statute on other grounds as recognized in*

2  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80 (2004).

3  ### 1.  Applicable Statute of Limitations

4  To this Court's knowledge, only one other court has squarely addressed what statute of

5  limitations applies to claims brought pursuant to 25 U.S.C. § 1914.  In *In re Adoption of Erin G.*,

6  the Supreme Court of Alaska rejected the petitioner's argument that no statute of limitations

7  applied, and instead adopted Alaska's one year statute of limitations governing adoption challenges

8  not based on fraud or duress.  *In re Adoption of Erin G.*, 140 P.3d 886, 889 (Alaska 2006).  There,

9  however, the parent was challenging an adoption order.  Here, Petitioner's parental rights have not

10  been terminated, and she continues to appear before the Juvenile Court at six month status reviews.

11  Thus, the Court does not find *In re Adoption of Erin G.* particularly applicable to the circumstances

12  of this case.[10]

13  Respondents identify three different state statutes from which they urge the Court to borrow

14  a limitations period.  Respondents submit that the closest state law analogue for Petitioner's

15  ineffective assistance of counsel claim under ICWA § 1912(b) is California Code of Civil

16  Procedure § 340.6, which provides a one year limitations period for claims of attorney malpractice.

17  Respondents also contend that the closest analogue for all of the claims is either California Family

18  Code § 9102(a), which provides a one year limitations period for challenging adoption decrees, or

19  California Code of Civil Procedure § 335.1, which provides a two year limitations period for

20  personal injury actions.  For the sole purpose of this motion for summary judgment, however,

21  Respondents assume that the two year statute of limitations under California Code of Civil

22  Procedure § 335.1 governs Petitioner's action here.  *See* Resp't MSJ at 13.

23

24  ---

[10] The Alaska Supreme Court reasoned that "Congress's decision to adopt a minimum limitations
25  period only for fraud and duress claims [pursuant to § 1913(d)] suggests that it was comfortable
with the possibility that shorter state limitations periods would govern claims brought under other
26  ICWA provisions."  *In re Adoption Erin G.*, 140 P.3d at 892.  However, this Court, by contrast, has
already concluded that "[g]iven the countervailing interests of the adoptive parents and the child
27  after an adoption is finalized, it seems that any other claim under ICWA should be entitled to at
least a two year limitation period, if not longer."  Order Denying-in-Part MTD, ECF No. 55 at 6.

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    All three state statutory provisions are imperfect analogies for the action before the Court.

2    California Code of Civil Procedure § 340.6 applies to actions "against an attorney" for malpractice,

3    not to actions seeking to vindicate a statutory right to representation, as is the case here.  Petitioner

4    is not suing her attorney for malpractice damages, and therefore California Code of Civil Procedure

5    § 340.6 is not the most analogous state law.  Nor is the Court convinced that California Family

6    Code § 9102(a) is an analogous state law.  California Family Code § 9102(a) specifically pertains

7    to actions "to vacate, set aside, or otherwise nullify an *order of adoption* on any ground, except

8    fraud."  However, unlike in *In re Adoption of Erin G.*, J.H. has not been adopted and is not

9    currently in adoption proceedings.  Indeed, Petitioner's parental rights have not been terminated,

10   and the Alameda County Superior Court, Juvenile Division retains jurisdiction and continues to

11   review the case on a six month cycle.[11]

12   Moreover, ICWA itself provides a two year limitations period for claims seeking to

13   withdraw voluntary consent from a "final decree of adoption" on grounds of fraud or duress.  *See*

14   25 U.S.C. § 1913(d).  As this Court has previously noted, given the countervailing interests of the

15   adoptive parents and the child after an adoption is finalized, it seems that any other claim under

16   ICWA should be entitled to at least a two year limitations period, if not longer, for "when there is

17   doubt as to the proper interpretation of an ambiguous provision in a federal statute enacted for the

18   benefit of an Indian tribe, the doubt [will] benefit the Tribe, for ambiguities in federal law have

19   been construed generously in order to comport with traditional notions of sovereignty and with the

20   federal policy of encouraging tribal independence.'"  *Artichoke Joe's Cal. Grand Casino v. Norton*,

21   353 F.3d 712, 729 (9th Cir. 2003) (internal quotation marks, citations, and alteration omitted);

22   *accord* Order Denying-In-Part MTD at 6.  For these reasons, the Court rejects Respondents'

23

24   ────────────────────

[11] If Petitioner's parental rights had been terminated, the Court would be dealing with a very

25   different set of circumstances.  Termination of parental rights is appealable, but may not otherwise
     be challenged in the state court dependency action, as the termination of parental rights destroys

26   the Juvenile Court's jurisdiction.  *See In re Ronald V.*, 13 Cal. App. 4th 1803, 1806 (1993)
     (dependency order terminating parental rights could not be modified under California Welfare and

27   Institutions Code § 388 because the termination under § 366.26 destroyed jurisdiction).

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

1  suggestion that the state laws providing for a one year statute of limitations are applicable to the

2  case at bar.

3       The Court also finds Respondents' final proposal, California Code of Civil Procedure §

4  335.1, inapplicable.  Section 335.1, providing for a two year statute of limitations, applies to

5  actions seeking monetary damages for personal injuries, including claims brought pursuant to 42

6  U.S.C. § 1983.  *See Doe v. Mann*, 285 F. Supp. 2d 1229, 1241 (N.D. Cal. 2004) (applying

7  California's personal injury statute of limitations to Native American mother's § 1983 claim of

8  ineffective assistance of counsel in state court termination of parental rights proceeding), *aff'd on*

9  *other grounds*, 415 F.3d 1038 (9th Cir. 2005).  But Petitioner argues, and the Court agrees, that

10  unlike the plaintiff in *Doe v. Mann*, Petitioner here seeks only equitable relief under 25 U.S.C. §

11  1914, not damages for constitutional tort injuries under 42 U.S.C. § 1983.  California's two year

12  statute of limitations for personal injury claims, including constitutional tort claims seeking

13  damages, is therefore not analogous to a claim for equitable relief under 25 U.S.C. § 1914.

14       Petitioner, in turn, argues for a four year statute of limitations under California Code of

15  Civil Procedure §§ 343 and 1085, or alternatively, no statute of limitations under California

16  Welfare and Institutions Code § 385.  California Code of Civil Procedure § 1085 authorizes

17  mandamus actions "to compel the performance of an act which the law specially enjoins, as a duty

18  resulting from an office, trust, or station, or to compel the admission of a party to the use and

19  enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully

20  precluded," subject to California's four year catchall statute of limitations for civil actions,

21  California Code of Civil Procedure § 343.[12]  Petitioner seeks to invalidate the Juvenile Court's

22  dependency order under 25 U.S.C. § 1914, which the Court finds somewhat analogous to a

23  mandamus action under California Code of Civil Procedure § 1085.

24

25  [12] Petitioner also suggests that Cal. C.C.P. § 1094.5, California's independent cause of action for
administrative mandamus against agency adjudicators, may provide the appropriate analogous
26  statute of limitations.  However, because the underlying dependency action is a proceeding in
Juvenile Court, California Code of Civil Procedure § 1085, which provides an independent cause
27  of action for mandamus actions against state courts, provides a closer analogy to the instant suit
than does § 1094.5.
28

20

While California Code of Civil Procedure § 1085 provides a closer analogy for the action before the Court than any of the statutes cited by Respondents, California Welfare and Institutions Code § 385 provides the most apt analogy.  WIC § 385 provides that so long as the state court maintains jurisdiction over a dependent child, "[a]ny order made by the [Juvenile Court] . . . may *at any time* be changed, modified, or set aside, as the judge deems meet and proper."  WIC § 385 (emphasis added).  To this statute, the Court adds WIC § 388, which similarly provides that:

> [a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court or the child himself through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court.

WIC § 388(a).  Thus, under WIC §§ 385 and 388(a), there is no time bar to filing an action to change, modify, or set aside a juvenile court order concerning a dependent child, so long as the juvenile court continues to exercise jurisdiction over the child.

Here, the Alameda County Superior Court, Juvenile Division, still maintains jurisdiction over J.H. and continues to hold hearings every six months reviewing J.H.'s status as a dependent of that Court.  The relief Petitioner seeks in this action is a set aside of the Juvenile Court's foster care placement orders.  Thus, in light of the fact that Petitioner's parental rights have not been terminated, and in light of the type of relief Petitioner seeks, the Court finds WIC §§ 385 and 388 to be the most analogous state laws.  Furthermore, ICWA § 1921 provides:

> [i]n any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.

25 U.S.C. § 1921.  Here, California law under WIC §§ 385 and 388 provides no statute of limitation, thereby affording a higher standard of protection to the rights of Petitioner, a parent of an Indian child, than is afforded by ICWA itself, which is silent as to a limitations period.  Accordingly, ICWA § 1921 requires that the Court apply the statute of limitations under WIC §§ 385 and 388, which is no statute of limitations at all.  Petitioner's Petition is therefore timely, and

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

1   the Court will not grant Respondents' summary judgment on the ground that all of Petitioner's

2   claims are time barred.

3       Further, even assuming that the four year statute of limitation under C.C.P. §§ 343 and

4   1085 applies, Petitioner's claims would be timely.  Petitioner brought this action on June 7, 2010,

5   so all claims accruing after June 7, 2006, are within the four year statute of limitations.  Because

6   Petitioner's causes of action all post-date J.H.'s initial detention on December 19, 2006, all her

7   claims arise within the applicable period and are not time barred.

8                       **2.   Laches and Equitable Tolling**

9       Because the Court concludes that Petitioner's 25 U.S.C. § 1914 causes of actions are not

10  time barred, the Court therefore need not address the parties' arguments concerning the doctrines

11  of laches and equitable tolling.

12                  **B.  Individual Claims**

13      The Petition states seven counts under ICWA: (1) failure to notify J.H.'s Tribe of the

14  proceedings, in violation of 25 U.S.C. § 1912(a); (2) failure to comply with § 1913(a) in obtaining

15  an invalid waiver of parental rights; (3) denial of Petitioner's right to withdraw her waiver of

16  parental rights, in violation of § 1913(b); (4) ineffective assistance of appointed counsel, in

17  violation of § 1912(b); (5) denial of access to reports and other documents, in violation of §

18  1912(c); (6) failure to make "active efforts" to prevent breakup of the Indian family, in violation of

19  § 1912(d); and (7) lack of "clear and convincing" evidence to support foster care placement, in

20  violation of § 1912(e).  Both Petitioner and Respondents move for summary judgment on

21  Petitioner's claims regarding §§ 1912(a), 1913(a), 1912(b), 1912(d), and 1912(e).  Only

22  Respondents move for summary judgment on Petitioner's claims regarding §§ 1913(b) and

23  1912(c).  The Court addresses each count in turn.

24                  **1.   Section 1912(a) -- Inadequate Notice to the Tribe**

25      ICWA § 1912(a) provides that, "[i]n any involuntary proceeding in a State court, where the

26  court knows or has reason to know that an Indian child is involved, the party seeking foster care

27  placement of . . . an Indian child shall notify the parent . . . and the Indian child's tribe, by

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  registered mail with return receipt requested, of the pending proceedings and of their right of

2  intervention," and "[n]o foster care placement . . . proceeding shall be held until at least ten days

3  after receipt of notice by the parent . . . and the tribe."  25 U.S.C. § 1912(a).  An "Indian child" for

4  purposes of the ICWA means "any unmarried person who is under age eighteen and is either (a) a

5  member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological

6  child of a member of an Indian tribe."  25 U.S.C. § 1903(4).  If the child's tribe's identity or

7  location cannot be determined, notice must be provided to the Secretary of the Interior.  *Id.* §

8  1912(a).  Petitioner's first cause of action alleges that despite the Agency's knowledge that J.H. is a

9  member of the Cow Creek Band of the Umpqua Tribe, J.H.'s Tribe was not given prior written

10  notice of the January 2, 2007 jurisdictional hearing, in addition to other notice defects in the

11  proceedings.  Both parties move for summary judgment on this claim.

12      Respondents do not dispute that the Agency failed to provide the Tribe prior written notice

13  of the January 2, 2007 jurisdictional hearing,[13] *see* Resp't MSJ at 17; Resp't Opp'n at 10, but they

14  argue that the notice requirement under § 1912(a) does not apply to jurisdictional hearings.

15  Moreover, even if it does, such lack of notice constitutes harmless error because the Tribe received

16  notice of and participated in each and every subsequent hearing, including the January 14, 2008

17  hearing at which family reunification services were terminated and a permanent plan adopted.

18  Petitioner disputes that the Tribe received timely notice of all subsequent hearings but argues that,

19  irrespective of whether notice for subsequent hearings was timely, noncompliance with § 1912(a)'s

20  notice requirements for a single hearing is *per se* prejudicial and cannot be cured by providing

21  adequate notice for subsequent proceedings.

22      As an initial matter, the Court disagrees with Respondents' argument that the notice

23  requirement of § 1912(a) does not apply to jurisdictional hearings, even when the jurisdictional

24  hearing concerns a petition for foster care placement.  ICWA defines the term "foster care

25  placement" as "any action removing an Indian child from its parent or Indian custodian for

26

27  [13] J.H.'s Child Welfare Worker ("CWW") Linda Fuchs faxed copies of the Petition, Detention Report, and Jurisdiction/Disposition Report to Tribal representative Rhonda Malone on January 3, 2007, the day after the jurisdictional hearing.  Fuchs Decl. ¶ 16 & Ex. D.

28

23

United States District Court
For the Northern District of California

temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." 25 U.S.C. § 1903(1)(i). The jurisdictional hearing, at which J.H. was declared a dependent of the Juvenile Court and his foster care placement continued, falls squarely within the definition of a "foster care placement" proceeding under ICWA. Courts have "call[ed] attention to the imperative of complying with the letter of the ICWA." *In re H.A.*, 103 Cal. App. 4th 1206, 1209 (2002). Because "failure to give proper notice of a dependency proceeding to a tribe with which the dependent child may be affiliated forecloses participation by the tribe, notice requirements are strictly construed." *In re Samuel P.*, 99 Cal. App. 4th 1259, 1267 (2002) (citing *In re Desiree F.*, 83 Cal. App. 4th 460, 474-75 (2000)). Here, the Agency filed a Juvenile Dependency Petition concerning J.H. on December 21, 2006. *See* Fuchs Decl. Ex. B. The Agency knew by as early as December 29, 2006 that ICWA does or may apply to J.H.'s dependency proceedings. *See* Pet'r Decl. Ex. 16. The jurisdictional hearing was a foster care placement proceeding within the meaning of ICWA. *Id.* The Agency was therefore required to provide J.H.'s tribe with notice of the jurisdictional hearing.

However, although the Agency was required to comply with ICWA's notice requirements before the jurisdictional hearing, its failure to do so does not constitute jurisdictional error, as Petitioner suggests it does. *See In re K.B.*, 173 Cal. App. 4th 1275, 1282 (2009) (holding that "failure to comply with ICWA's notice provisions does not divest courts of jurisdiction to remove an Indian child from the custody of the parents"). Although Petitioner cites to some cases finding that failure to give notice to the tribe constitutes jurisdictional error, *see, e.g.*, *In re Desiree F.*, 83 Cal. App. 4th at 474-75; *In re Samuel P.*, 99 Cal. App. 4th at 1267, the Court is persuaded by the more recent decisions of the California Court of Appeals holding that "a notice violation under ICWA is not jurisdictional in the fundamental sense, but instead is subject to a harmless error analysis," *In re G.L.*, 177 Cal. App. 4th 683, 695 (2009). In *In re Brooke C.*, 127 Cal. App. 4th 377 (2005), the state court recognized the split of authority on the issue and concluded that violation of the ICWA notice requirement is not jurisdictional error, for "to hold otherwise would deprive the

24

United States District Court
For the Northern District of California

1   juvenile court of all authority over the dependent child, requiring the immediate return of the child

2   to the parents whose fitness was in doubt."  127 Cal. App. 4th at 384-85; *see also In re Antoinette*

3   *S.*, 104 Cal. App. 4th 1401, 1410-11 (2002).  Consistent with these well-reasoned and more recent

4   opinions of the California Court of Appeals, the Court concludes that the Agency's failure to

5   comply with ICWA's notice requirement here does not automatically invalidate the Juvenile

6   Court's jurisdictional and subsequent disposition orders placing J.H. in foster care.  Rather,

7   Petitioner "must show a reasonable probability that he or she would have obtained a more

8   favorable result in the absence of the error."  *In re G.L.*, 177 Cal. App. 4th at 696 (citations

9   omitted).

10         The Court concludes that the notice defect was not prejudicial and is not grounds for

11  invalidating the Jurisdictional Order or any orders thereafter.  As courts have made clear, one of the

12  key purposes of the tribal notice requirement is to provide the child's tribe with the opportunity to

13  determine whether ICWA applies and whether it wishes to intervene in or assume jurisdiction over

14  the proceeding.  *See In re Jennifer A.*, 103 Cal. App. 4th 692, 706 (2002).  Petitioner herself points

15  to language from the Bench Handbook stating, "[a] failure to comply with the notice requirement

16  usually constitutes prejudicial error requiring reversal and remand, unless the tribe participated in

17  or indicated no interest in the proceeding."  Cohn Decl. Ex. 2 (Bench Handbook § 2.6); Pet'r

18  Opp'n at 11.  *See also In re H.A.*, 103 Cal. App. 4th at 1213 ("Unless a tribe has participated in or

19  expressly indicated no interest in the proceedings, the failure to comply with ICWA notice

20  requirements . . . constitutes prejudicial error.").  Petitioner insists that because the tribe did not

21  participate in the January 2, 2007 jurisdictional hearing, case law instructs that the notice defect

22  constitutes *per se* prejudicial error and mandates remand.  In none of the cases Petitioner cites,

23  however, did the Agency rectify its initial notice error by providing the tribe with proper notice of

24  all subsequent proceedings prior to disposition.  Rather, the cases on which Petitioner relies involve

25  defective notice resulting in the tribe's complete lack of participation in the proceedings from start

26  to finish.  Under such circumstances, remand was required so that the tribe could have an

27  opportunity to determine whether the child at issue was in fact an Indian child and whether the

28

25

United States District Court
For the Northern District of California

1   tribe wished to assert its tribal rights.  *See, e.g.*, *In re H.A.*, 103 Cal. App. 4th at 1210-11; *Dwayne*

2   *P. v. Superior Court*, 103 Cal. App. 4th 247, 254-55 (2002); *In re Marinna J.*, 90 Cal. App. 4th

3   731, 739 (2001); *In re Pedro N.*, 35 Cal. App. 4th 183, 188 (1995).

4           Here, by contrast, it is undisputed that the Agency faxed the tribal representative copies of

5   all court documents on January 3, 2007, the day after the jurisdictional hearing.  Fuchs Decl. ¶ 16.

6   Although the tribe was not given timely notice of the disposition hearing, originally scheduled for

7   January 16, 2007, that hearing was continued for the express purpose of providing proper notice to

8   the tribe to ensure its participation.  Tribal representative Rhonda Malone appeared by telephone

9   and testified at the April 5, 2007 disposition hearing and provided her expert opinion on whether

10  J.H. should be removed from the mother's home.  *See* Decl. of Rhonda Malone in Supp. of Resp't

11  MSJ ("Malone Decl. ISO Resp't") ¶ 5.  The Agency followed the ICWA placement preferences

12  and placed J.H. in an institution for children approved by an Indian tribe which has a program

13  suitable to meet the Indian child's needs, in accordance with 25 U.S.C. § 1915(b)(iv).  *See id.* ¶ 7.

14  In sum, after being given notice and opportunity to participate in J.H.'s disposition hearing, the

15  Tribe concluded that: (1) it was not in J.H.'s best interests for the Tribe to intervene in the

16  proceedings; (2) the Tribe was satisfied with the Agency's efforts on behalf of the family; and (3)

17  the Tribe agreed with the Agency's recommendations for continued out of home placement.  *See*

18  *id.* ¶¶ 6-9.  As such, the Court concludes that J.H.'s Tribe actually participated in the proceedings

19  and that Petitioner cannot show a reasonable probability that she would have enjoyed a more

20  favorable result in the absence of the error as to notice of the initial jurisdictional hearing.  *See In*

21  *re S.B.*, 130 Cal. App. 4th 1148, 1162 (2005).  Although the Agency was required to provide the

22  Tribe timely notice of the jurisdictional hearing, such error was not prejudicial and is not grounds

23  for invalidating the January 2, 2007 Jurisdictional Order or any of the Juvenile Court's subsequent

24  orders.  Accordingly, the Court DENIES Petitioner's motion for summary judgment and GRANTS

25  Respondents' cross-motion for summary judgment on count I.

26          **2.  Sections 1913(a) & (b) -- Invalid Waiver**

27

28
                                                        26

1        Section 1913(a) provides that "[w]here any parent . . . voluntarily consents to a foster care

2   placement . . . , such consent shall not be valid unless executed in writing and recorded before a

3   judge of a court of competent jurisdiction and accompanied by the presiding judge's certificate that

4   the terms and consequences of the consent were fully explained in detail and were fully understood

5   by the parent . . . ." 25 U.S.C. § 1913(a).  Furthermore, § 1913(b) provides that "[a]ny parent . . .

6   may withdraw consent to a foster care placement under State law at any time and, upon such

7   withdrawal, the child shall be returned to the parent."  25 U.S.C. § 1913(b).  Petitioner's sixth

8   cause of action seeks to invalidate J.H.'s foster care placement on grounds that Petitioner's initial

9   waiver of her right to a contested jurisdictional hearing and consent to the allegations in the

10  Agency's Petition was obtained as a result of ineffective assistance of counsel and in violation of

11  ICWA § 1913(a).  Petitioner's seventh cause of action alleges that she has been denied her right to

12  withdraw consent pursuant to 25 U.S.C. § 1913(b).  Both parties move for summary judgment on

13  count VI, but only Respondents move for summary judgment on count VII.

14       Respondents submit that § 1913(a) and (b) apply only to *voluntary* proceedings and not to

15  involuntary, Agency-initiated dependency proceedings, such as are at issue here, and that the Court

16  therefore need not reach the merits of Petitioner's claim.  *See Doe v. Mann*, 415 F.3d 1038, 1063

17  (9th Cir. 2005) (noting that § 1913 "establishes parental rights in *voluntary* child custody

18  proceedings," as distinguished from § 1912(a), which specifically requires notice when an

19  "*involuntary* proceeding is pending in state court" (emphasis in original)).  Petitioner does not

20  appear to contest this point, nor does she attempt to argue that the entire underlying proceeding was

21  voluntary.  Instead, she argues that although the waiver she signed "did not specifically involve a

22  consent to foster care placement or to termination of parental rights, . . . under the circumstances of

23  this case it effectively meant the same thing."  Pet'r MSJ at 16.  Petitioner argues that the waiver

24  functioned not only as a consent to jurisdiction, but also "unbeknownst to Petitioner, . . . as a full

25  consent to the allegations of the school Principal and a waiver of any right to submit any contrary

26  evidence."  *Id.*

27

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

1    Although § 1913 does not distinguish on its face between voluntary and involuntary

2    proceedings, several other courts have rejected the argument that § 1913(a) applies to all voluntary

3    "acts of foster care placement or termination of parental rights . . . regardless of the type of

4    underlying procedure at issue." *In re J.M.*, 218 P.3d 1213, 1216 (Mont. 2009) (holding that § 1913

5    was inapplicable where parent challenged court's termination of parental rights based, in part, on

6    parent's earlier stipulation in the course of an involuntary custody proceeding that her child was a

7    youth in need of care); *see also In re Welfare of M.G.*, 201 P.3d 354, 358 (Wash. 2009) (holding

8    that § 1913 was inapplicable where parent challenged a dependency order to which she had

9    previously consented during the course of an involuntary custody proceeding initiated by the state).

10   As the Supreme Court of Montana reasoned, it would make no sense to hold that § 1913 applies to

11   a parent's waiver of rights in the context of an involuntary proceeding, as to do so would suggest

12   that the Agency's temporary placement of the child was revocable by the parent, *see* 25 U.S.C. §

13   1913(b) ("[T]he consent of the parent may be withdrawn for any reason at any time . . . and the

14   child *shall* be returned to the parent." (emphasis added)), which is clearly not the case where the

15   state has initiated involuntary dependency proceedings. *See In re J.M.*, 218 P.2d at 1217; *see also*

16   *In re Esther V.*, 248 P.3d 863, 969-70 (N.M. 2011) (recognizing same problem and similarly

17   concluding that "§ 1913 applies only to voluntary proceedings initiated by the parent").

18       The Court agrees with the well-reasoned opinions of the Supreme Court of Montana and

19   other courts to have considered this question, and now joins them in concluding that § 1913(a) and

20   (b) do not apply to a parent's consent given in the course of an involuntary child dependency

21   proceeding initiated by the state, as is the case here.  By enacting § 1913, entitled "Parental rights;

22   voluntary termination," "Congress intended to establish a separate set of requirements for cases

23   where a parent or Indian custodian voluntarily initiates a proceeding in order to relinquish parental

24   or custodial rights to a child." *In re Esther V.*, 248 P.3d at 869-70; *In re Welfare of M.G.*, 210 P.3d

25   at 357.  "Section 1913 does not contain the same procedural due process protections found in §

26   1912, such as notice to the parents and tribe, expert testimony, the appointment of counsel, and

27   proof by clear and convincing evidence." *In re Esther V.*, 248 P.3d at 870.  Thus, ICWA's

28

**United States District Court**
For the Northern District of California

28

1    statutory structure reinforces the Court's conclusion that §§ 1912 and 1913 prescribe different

2    procedural guarantees for involuntary and voluntary proceedings, respectively.[14]  Petitioner fails to

3    cite a single case concluding otherwise.

4          Furthermore, even if § 1913(a) and (b) did apply here, the Court finds that any error in

5    obtaining Petitioner's waiver was not prejudicial and thus not proper grounds for invalidating any

6    of the underlying dispositions of the Juvenile Court.  The Court does not find plausible Petitioner's

7    argument that the Juvenile Court treated her waiver of rights as equivalent to a voluntary

8    relinquishment of parental rights.  Petitioner puts too much stock in her waiver of rights form.  The

9    Court does not believe that Petitioner's "no contest" plea formed the entire basis for the Juvenile

10   Court's findings at the jurisdictional and disposition hearings.  Nor does the Court believe that the

11   Juvenile Court would have reached a different finding based on the totality of the evidence had

12   Petitioner not signed the waiver form.  The Agency made it clear in each of its reports to the

13   Juvenile Court that Petitioner disagreed with its out-of-home placement recommendation and that

14   Petitioner denied the ██████████████ occurring in her home.  The Juvenile Court

15   therefore knew that Petitioner did not admit the underlying factual allegations.  The Juvenile Court

16   apparently relied not on any admission by Petitioner, but rather on the overwhelming evidence

17   from the Agency's investigations, in making its factual findings and declaring J.H. a dependent of

18   the Court requiring foster care placement.

19         Moreover, although Petitioner alleges that her request to withdraw her initial waiver at the

20   January 16, 2007 hearing was refused, the record reflects otherwise.  According to the transcript of

21   the January 16, 2007 hearing, Attorney Crowell represented to the Court that Petitioner wished to

22   contest the whole recommendation of the Agency's report, and the Court accordingly set the

23   disposition hearing for a contested calendar.  At the April 5, 2007 contested disposition hearing,

24   Petitioner was permitted to call and cross-examine witnesses and introduce evidence.  Thus, the

25

26

27   [14] The very fact that Petitioner alleges the waiver was obtained as a result of her counsel's
     ineffective assistance underscores that this Petition involves an involuntary proceeding, for there is
28   no right to counsel for voluntary proceedings under ICWA.

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Juvenile Court recognized Petitioner's withdrawal of her previously signed waiver and granted her

2    all the procedural rights of a contested disposition hearing.

3         In summary, this Court looks to the underlying nature of the child custody proceeding to

4    determine whether § 1913(a) and (b) apply.  Here, Petitioner's signing of the waiver of rights

5    occurred in the context of a state-initiated, involuntary dependency proceeding -- not a voluntary

6    relinquishment of parental rights.  Although she may have had rights under California law, such as

7    the requirement under WIC § 361(c)(5)(A) that any waiver used at a dispositional hearing be made

8    "knowingly, intelligently, and voluntarily," Petitioner has not brought a claim for violation of state

9    law.  Because Petitioner's rights under ICWA § 1913(a) and (b) were not violated, the Court

10   DENIES Petitioner's motion for summary judgment on count VI and GRANTS Respondents'

11   motion for summary judgment on both counts VI and VII.

12              **3.   Section 1912(b) -- Ineffective Assistance of Appointed Counsel**

13        Pursuant to both ICWA § 1912(b) and WIC § 317, the indigent parent of an Indian child

14   has the right to court-appointed counsel in any removal, placement, or termination proceeding.

15   Petitioner's second cause of action alleges that her court appointed counsel failed to provide

16   effective assistance, in violation of her statutory rights.  Both parties move for summary judgment

17   on Count II.

18        Under California law, the right to effective assistance of counsel in dependency

19   proceedings is governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668

20   (1984).  *In re Emilye A.*, 9 Cal. App. 4th 1695, 1711 (1992).  To prevail on an ineffective assistance

21   claim under *Strickland*, a petitioner must show that: (1) "counsel's performance was so deficient

22   that it 'fell below an objective standard of reasonableness,'" *Woods v. Sinclair*, 655 F.3d 886, 907

23   (9th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688), and (2) "'there is a reasonable probability

24   that, but for counsel's unprofessional errors, the result of the proceedings would have been

25   different,'" *id.* (quoting *Strickland*, 466 U.S. at 694).  "'A reasonable probability is a probability

26   sufficient to undermine confidence in the outcome.'"  *In re Emilye A.*, 9 Cal. App. 4th at 1711

27   (quoting *Strickland*, 466 U.S. at 694).

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    There appears to be no controlling authority on whether the right to counsel guaranteed by

2    ICWA § 1912(b) is likewise subject to the "harmless error" test.  *See Doe v. Mann*, 285 F. Supp. 2d

3    1229, 1239-40 (N.D. Cal. 2003) ("This court has found no federal case law interpreting the scope

4    of this right [to counsel under ICWA]."), *aff'd by Doe v. Mann*, 415 F.3d 1038 (9th Cir. 2005)

5    (without addressing the scope of § 1912(b)); *see also In re David H.*, 165 Cal. App. 4th 1626, 1634

6    n.9 (2008) (applying harmless error review where parent was unable to cite any case supporting a

7    reversible per se standard for an ICWA violation of right to counsel).  Despite the lack of authority

8    on this question, the Court need not now decide whether harmless error is the appropriate standard,

9    because Petitioner here does not argue for any other standard.  *See* Pet'r MSJ at 21-22.  The Court

10   will therefore assess Petitioner's § 1912(b) claim under the *Strickland* test.

11                                  **a.  Attorney Crowell**

12   Petitioner alleges that she was deprived of effective assistance of counsel at the January 2,

13   2007 jurisdictional hearing and at the April 5, 2007 disposition hearing.  Attorney Crowell

14   represented Petitioner at both of these hearings.  Both Petitioner and Respondents move for

15   summary judgment with respect to Attorney's Crowell's representation.

16                                  **i.  Performance**

17   With respect to Attorney Crowell, Petitioner alleges that her counsel did not meet with or

18   discuss the Agency's allegations with her prior to the jurisdictional hearing held January 2, 2007.

19   Pet'r Decl. ¶ 10(b).  Petitioner alleges that Attorney Crowell failed to investigate the allegations or

20   to object to the contents of the Jurisdiction Report at the jurisdictional hearing.  Petitioner further

21   alleges that Attorney Crowell provided ineffective assistance by pressuring Petitioner to sign her

22   waiver of rights and plead no contest, without ever explaining to Petitioner what rights she was

23   waiving by consenting to the Juvenile Court's jurisdiction over her son.  *Id.* ¶ 10(e), (f), (g).

24   Petitioner also alleges that Attorney Crowell provided ineffective assistance at the April 5,

25   2007 disposition hearing because, despite having requested a contested hearing on Petitioner's

26   behalf, Attorney Crowell put forth no evidence at the April 5 hearing and ignored Petitioner's

27   instruction to challenge the Agency's recommendation of out-of-home placement for J.H.

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    Petitioner asserts that Attorney Crowell failed to introduce a variety of allegedly material evidence,

2    including an allegedly exculpatory medical report, the allegedly exculpatory CALICO interview,

3    the decision by prosecutorial authorities ███████████████, the psychological history of

4    J.H., the Agency's own uncertainty as to whether J.H. ██████████████, and evidence that

5    the ████████████████ raised by J.H.'s school principal were unreliable. *Id.* ¶ 8. Petitioner

6    alleges that this failure further led to the expert recommendation by the tribal representative, Ms.

7    Malone, that J.H. should be placed outside the home.

8            The Court is disturbed by Attorney Crowell's apparent failure to advocate zealously on

9    behalf of her client's interests. If true, Petitioner's allegations that Attorney Crowell failed to

10   explain the waiver form, to discuss the case with Petitioner, and to comply with Petitioner's

11   requests to submit evidence and challenge the Agency's foster care placement recommendation

12   would seem to place her performance below what is objectively reasonable. Nonetheless, if

13   petitioner is unable to demonstrate prejudice, then the Court need not send the fact intensive issue

14   of performance to a jury. *See Strickland*, 466 U.S. at 687. The Court therefore now considers

15   whether Petitioner was prejudiced by Attorney Crowell's alleged deficient performance such that

16   the Juvenile Court's foster care placement orders should be invalidated.

17                            **ii.  Prejudice**

18           Respondents argue that, to the extent Attorney Crowell's performance was deficient, such

19   deficiency was harmless because there is no reasonable probability that the Juvenile Court would

20   not have declared J.H. a dependent child of the Court or placed him out of Petitioner's home, given

21   the nature of the allegations and the totality of the evidence. For the following reasons, the Court

22   concludes that Petitioner has not met her burden of establishing a "reasonable probability that, but

23   for counsel's unprofessional errors, the result of the proceedings would have been different."

24   *Woods*, 655 F.3d at 907.

25           Petitioner first analogizes her right under ICWA § 1912(b) to the Sixth Amendment and

26   argues that, as in the criminal context, prejudice should be presumed here because Attorney

27   Crowell "entirely fail[ed] to subject the [state's] case to meaningful adversarial testing." *See*

28
                                                32

**United States District Court**
For the Northern District of California

1    *United States v. Cronic*, 466 U.S. 648, 659 (1984) (holding that "if counsel entirely fails to subject

2    the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth

3    Amendment rights that makes the adversary process itself presumptively unreliable").  As an initial

4    matter, it is not clear that the presumption of prejudice identified in *Cronic* applies to a juvenile

5    dependency proceeding.  Indeed, as Judge Grewal noted in a discovery order in this case, Petitioner

6    "has not cited a single case in which a waiver of rights or pleading no contest was deemed

7    sufficient to meet the standard for presuming prejudice."  ECF No. 191 at 6 n.15.  Moreover, a

8    presumption of prejudice is warranted only in the most egregious of circumstances, where counsel

9    entirely fails to subject the prosecution's case to adversarial testing over the course of

10   representation.  *See Bell v. Cone*, 535 U.S. 685, 696-97 (2002) ("When we spoke in *Cronic* of the

11   possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we

12   indicated that the attorney's failure must be complete.  We said 'if counsel *entirely* fails to subject

13   the prosecution's case to meaningful adversarial testing.'" (emphasis added in *Bell*)).  The Court

14   finds that here, Attorney Crowell cross-examined the tribal representative at the April 5, 2007

15   hearing and made meaningful efforts to secure visitation rights and reunification services.  *See*

16   Gormley Decl. Ex. J at 11:18-12:25.  Thus, even if the *Cronic* presumption of prejudice is

17   applicable to juvenile dependency proceedings, the record does not support applying that

18   presumption here.

19        Second, even absent a presumption, Petitioner argues that she was prejudiced by her

20   counsel's deficient performance in obtaining her invalid waiver, and by her counsel's failure to

21   introduce several pieces of evidence: (1) evidence that the police dropped their criminal

22   investigation of her and Archie O. regarding ████████████████████ (2) J.H.'s

23   ███████████████, conducted January 16, 2007, which was inconclusive; (3) the CALICO

24   interview, conducted December 20, 2006, during which J.H. did not disclose ████████████

25   ████████████████████████████████ as reported by Isaacson; (4) J.H.'s

26   medical history, including ████████████████████████████████████████

27   ████████████████████████████████████████████, as they would have

28

United States District Court
For the Northern District of California

1    been required to do under state law; (5) evidence that neither she nor Archie O. have ever been

2    ███████████████████████████████████ and (6) evidence from the Agency's

3    January 11, 2007 disposition report that even the Agency was uncertain as to whether J.H. had

4    ███████████████   Pet'r Decl. ¶ 8.  Petitioner contends that all of this evidence tended to

5    suggest that Principal Isaacson's allegations █████████████████████ were untrue

6    and lacked credibility.

7          The Court does not find that Petitioner was prejudiced by her counsel's alleged failure to

8    advise her appropriately of the consequences of signing the jurisdictional waiver or her failure to

9    present the evidence Petitioner identifies as "exculpatory."  As discussed in the previous section

10   concerning Petitioner's allegedly invalid waiver, any error in obtaining the waiver was cured by

11   Attorney Crowell's subsequent request at the January 16, 2007 hearing for a contested disposition

12   hearing, which was then held on April 5, 2007.  At the April 5, 2007 contested disposition hearing,

13   the Juvenile Court was well aware that Petitioner denied the allegations █████████ and

14   disagreed with the Agency's out-of-home placement recommendations, as noted in each of the

15   Agency's reports.  Thus, this Court finds no evidentiary basis for concluding that the Juvenile

16   Court based its findings solely or even partially on Petitioner's initial plea of no contest.  To the

17   contrary, the Juvenile Court had an abundance of evidence supporting its finding that J.H. was at

18   substantial risk of physical or emotional danger if he remained in the home, including: J.H.'s

19   disclosure to his school principal that his mother's live-in boyfriend ████████ him;

20   J.H.'s history and continuing ███████████████████████████████████

21   ████████████████████████; the mother's self-reported habit of ████████

22   ███████████████████████████████████████████████████ and

23   her lack of awareness that this was not appropriate behavior; J.H.'s exposure to Archie O.'s

24   ███████████████████████████ in the house; the mother's denial of the possibility

25   that █████████████ and the mother's refusal to recognize that her own experiences

26   with █████████ may be influencing her reactions to J.H.'s circumstances.

27

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    Furthermore, Petitioner's theory that the tribal representative's expert testimony was

2  somehow misinformed by the Agency's questioning is unsupported by the record.  Petitioner

3  submits a declaration from Malone stating that, had the Juvenile Court not asked her to assume that

4  J.H. had ████████████████ she "would have recommended further evaluation of J.H. with

5  continued detention rather than the recommendation I gave."  Decl. of Rhonda Malone in Supp. of

6  Pet'r MSJ ("Malone Decl. ISO Pet'r") ¶¶ 4-6.  In other words, Malone would still have

7  recommended continued detention of J.H. pending further investigation, even if she had not been

8  asked to assume the truth of the allegations in the petition.  Contrary to Petitioner's belief that

9  Malone's testimony was based entirely on an unsubstantiated hypothetical, Malone testified clearly

10  in Juvenile Court that her opinion was based on the documents that had been sent to her concerning

11  J.H.'s case, and specifically on "[t]he facts that are in the paperwork about [J.H.'s] comments to his

12  principal and ██████████████████████████████████████ those things,

13  the circumstances regarding the protective custody, and the allegations against █████████████

14  Gormley Decl. Ex. J at 10-11.  Even more compelling, Respondents submit a different declaration

15  from Malone confirming in unequivocal terms that:

16      [b]ased on the allegations in the petition and the information contained in the
       various reports submitted by the Agency, including the statements made by [J.H.]
17     and his reported behaviors while in foster care, I was convinced that [J.H.] risked
       ███████████████████████ if returned to [the mother's] home.  The Tribe
18     was particularly concerned because of the continued presence of the ███████
       ███████ in the home.  Therefore, the Tribe supported the Agency's
19     recommendation both that [J.H.] be continued as a dependent of the Court and that
20     he be placed out of his mother's home.

21  Malone Decl. ISO Resp't ¶ 6.  In light of all the evidence, the Court finds that neither the Juvenile

22  Court's findings nor Malone's expert opinion that J.H. was at substantial risk of █████████

23  ███████████████████ if he remained in Petitioner's home was contingent on Petitioner's

24  allegedly invalid waiver.

25      Moreover, the Court is not persuaded of a reasonable probability that introduction of

26  Petitioner's allegedly exculpatory evidence would have yielded a different result.  In assessing

27  prejudice, the Court must "reweigh the evidence in aggravation against the totality of available

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). Respondents effectively argue that Petitioner's purportedly "mitigating" evidence is either inconclusive or in fact corroborative of the Agency's recommendations, while the considerable aggravating evidence remains unrefuted. First, based on Isaacson's handwritten statement; the CALICO interview; and interviews with Petitioner, Archie O., and the other two adults who lived in J.H.'s home, the San Leandro Police Department Report concludes that there was sufficient probable cause of ███████████████ to refer the matter to the District Attorney. That the District Attorney never formally brought charges against Archie O. or Petitioner is inconclusive. Second, the Children's Hospital report found physical findings of a ████████████ but noted that such symptoms were inconclusive and could be attributable to either ████████████████ Again, the lack of definitive medical proof ████████████ does not create a reasonable probability that the Juvenile Court would have reached a different conclusion regarding J.H.'s safety in Petitioner's home, in light of the allegations ████████████ Third, although the CALICO interview itself was not submitted into evidence before the Juvenile Court, the Agency's Investigation Narrative and January 2, 2007 Jurisdiction/Disposition Report summarized the CALICO interview and incorporated that evidence by reference. Moreover, J.H.'s failure to disclose that ████████████████ during the CALICO interview and insistence that he "[did not] want to talk about that," rather than an outright denial ████████████, does not undermine the evidentiary weight of Isaacson's report.[15]

_____

[15] Furthermore, Petitioner confirmed at the hearing on the instant summary judgment motions that she has not presented any of this allegedly exculpatory evidence to the Juvenile Court at any of the six month status review hearings. Moreover, Petitioner provided no reason for her failure to do so. The Court finds that Petitioner's failure to present this evidence to the Juvenile Court, which continues to retain jurisdiction over J.H., while asking this Court to invalidate the Juvenile Court's disposition order based on the fact that the Juvenile Court did not consider this evidence, belies a possible forum-shopping strategy incompatible with the notions of comity and federalism that this Court strives to uphold. While the Court concluded in its prior order that the ongoing status reviews do not preclude this Court from exercising jurisdiction over the review of the underlying dependency decision, *see* ECF Nos. 55, 221 at 5, the Court does find on the merits that Petitioner's ability and opportunity to present the previously omitted evidence to the Juvenile Court at any of the status reviews is relevant to the Court's finding that Petitioner has not been prejudiced by any of her alleged ICWA violations.

36

United States District Court
For the Northern District of California

1    Finally, and of particular importance, the Agency's own uncertainty in its disposition report

2    as to whether J.H. had, in fact, ███████████████████ in his home does not undermine

3    the Juvenile Court's foster care placement orders, contrary to Petitioner's belief.  The Agency's

4    disposition report acknowledged that "[w]hether or not [J.H.] has ██████████████████

5    remains a question," but noted concern as to whether J.H. "gets his therapeutic needs met at home .

6    . . .  His behavior is showing that he needs additional help getting his needs met."  Gormley Decl.

7    Ex. F at 7.  This report does not undermine the Agency's recommendation that J.H. be placed

8    outside the home.

9    The Court concludes that none of this evidence individually, nor all of it collectively, raises

10   a reasonably probability that the outcome of J.H.'s dependency proceedings would have been

11   different.  Contrary to Petitioner's belief, the Juvenile Court did *not* make a specific finding that

12   ████████████████████████████████████████████ J.H.  No judge or other third party

13   may ever be able to know, conclusively, whether J.H. ███████████████ or not.  The purpose of

14   the dependency proceedings concerning J.H., however, is not to prosecute wrongdoers, but rather

15   to protect the best interests of the child.  The Juvenile Court's foster care placement was based on a

16   finding, supported by clear and convincing evidence, that J.H. would likely suffer serious

17   emotional or physical damage if he remained in Petitioner's home, in part due to a substantial risk

18   that Petitioner would fail to ████████████████.  Ample evidence in the record supports

19   this finding, and the evidence omitted from the Juvenile Court's consideration does not undermine

20   it.  Petitioner was not prejudiced by the alleged deficient performance of Attorney Crowell, and

21   therefore Petitioner cannot prevail on her § 1912(b) claim as to Attorney Crowell.

**b.  Attorney Smith**

23   Petitioner also alleges that her § 1912(b) rights were violated by her second appointed

24   counsel, Attorney Cheryl Smith, who represented Petitioner from December 13, 2007 until May

25   27, 2010, when Attorney Smith moved to withdraw as counsel.  Specifically, Petitioner alleges that

26   Attorney Smith's representation was ineffective because she failed to advise Petitioner of

27   Petitioner's right under ICWA § 1913(b) to withdraw her consent to the foster care placement;

28

37

United States District Court
For the Northern District of California

1   failed to challenge the Agency's recommendations at the twelve month dependency status review

2   hearing on January 14, 2008; and failed to advise Petitioner or the Juvenile Court that ICWA §

3   1915(b) requires that "any child accepted for foster care . . . shall be placed in the least restrictive

4   setting which most approximates a family and in which his special needs, if any, may be met.  The

5   child shall also be placed within reasonable proximity to his or her home."  *See* FAP ¶¶ 46-51.

6   Only Respondents move for summary judgment on Petitioner's § 1912(b) claim with respect to

7   Attorney Smith's representation.

8          The Court does not find that Petitioner has set forth sufficient evidence demonstrating that

9   Attorney Smith's performance fell below an objectively reasonable standard.  After being brought

10  in as counsel, Attorney Smith sought and received a continuance to prepare adequately.  Attorney

11  Smith reviewed the case history and old evidence as well as analyzed new evidence.  *See* Gormley

12  Decl. Ex. B at 17:14-19; 18:21-19:11; 21:7-22; 22:18-23.  Furthermore, Attorney Smith met with

13  Petitioner during the month leading up to the January 14, 2008 hearing and explained to her the

14  implications of terminating family reunification services.  *Id.* Ex. B at 21:13-24.  Moreover,

15  Attorney Smith successfully negotiated a settlement to terminate family reunification services in

16  exchange for not setting a § 366.26 hearing for the termination of parental rights, and further

17  secured a minimum visitation schedule between Petitioner and J.H., as well as therapeutic visits

18  and ongoing family therapy.  *Id.* Ex. B at 22:6-23:20.  This is not evidence of ineffective

19  assistance.  Based on this record, the Court finds no support for Petitioner's allegations that

20  Attorney Smith's performance fell below an objectively reasonable standard, and therefore

21  Petitioner cannot prevail on her § 1912(b) claim as to Attorney Smith.

22         In summary, the Court finds that Attorney Smith's performance was not objectively

23  unreasonable.  As to Attorney Crowell, the Court finds that Petitioner has not been prejudiced by

24  any alleged deficient performance in Attorney Crowell's representation.  Accordingly, the Court

25  DENIES Petitioner's motion for summary judgment and GRANTS Respondents' motion for

26  summary judgment on count II.

27                    **4.  Section 1912(e) -- Insufficient Evidence to Support Foster Care Placement**

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    Petitioner's fifth cause of action alleges that the Superior Court's foster care placement

2  order was not supported by "clear and convincing evidence, including testimony of qualified expert

3  witnesses, that the continued custody of the child by the parent . . . is likely to result in serious

4  emotional or physical damage to the child," as was required under ICWA § 1912(e).  25 U.S.C. §

5  1912(e).  Both parties move for summary judgment on count V.

6    Petitioner's assertion that "the only evidence received by the Juvenile Court in making its

7  determination were the accusation of the school Principal -- which was reported in the Agency's

8  reports along with their own statements of uncertainty -- and the testimony of the Tribe's expert,"

9  is patently inconsistent with the record.  *See* Pet'r MSJ at 18.  As discussed above, in the context of

10  whether Petitioner suffered prejudice as a result of the allegedly deficient performance of her court-

11  appointed counsel, the Juvenile Court's Disposition Order was based on the various Agency

12  reports, which in turn were based on the CALICO interview that Petitioner believes was

13  wrongfully withheld from the Juvenile Court, and based on ongoing interviews with (1) Petitioner,

14  J.H., and Archie O.; (2) the various therapists treating Petitioner and J.H.; and (3) the foster care

15  homes and institutions in which J.H. was placed.  The Court therefore finds the Disposition Order

16  supported by clear and convincing evidence.  To the extent the Jurisdictional Order was not

17  supported by clear and convincing evidence because it was based on an invalid waiver of rights,

18  such error was not prejudicial, and was in any event cured by the clear and convincing evidence

19  supporting the Disposition Order.  The Court therefore DENIES Petitioner's motion for summary

20  judgment and GRANTS Respondents' cross-motion for summary judgment on count V.

21    **5.  Section 1912(c) -- Denial of Access to Reports and Other Documents**

22    Petitioner's third count seeks to invalidate the foster care placement based on allegations

23  that she was denied timely access to the Agency's January 2, 2007 Jurisdiction Report and other

24  key reports and documents relevant to the dependency proceedings, in violation of ICWA §

25  1912(c).  Section 1912(c) provides that "[e]ach party to a foster care placement . . . proceeding

26  under State law involving an Indian child shall have the right to examine all reports or other

27

28

39

**United States District Court**
For the Northern District of California

1    documents filed with the court upon which any decision with respect to such action may be based."

2    25 U.S.C. § 1912(c).  Only Respondents move for summary judgment on count III.

3         Petitioner alleges that the Agency did not file its Jurisdiction Report until the day of the

4    Jurisdiction Hearing, and that as a consequence, Petitioner was denied adequate opportunity to read

5    and understand the Agency's Petition recommending removal of J.H. from the family home -- a

6    different recommendation than what had previously been discussed in the TDM Plan.  Petitioner

7    also alleges that she was denied the opportunity to: (1) discuss the contents of the Jurisdiction

8    Report with her appointed counsel; (2) investigate the facts contained therein; or (3) prepare any

9    response.  FAP ¶ 55; Pet'r Decl. ¶ 10.  Petitioner further alleges that the untimely filing of the

10   Jurisdiction Report is representative of the Agency's routine pattern of filing its reports with the

11   Juvenile Court just prior to the hearing, thus depriving Petitioner of an opportunity to review the

12   reports or prepare challenges to their contents.  However, Petitioner is not entirely clear as to what

13   other documents she believed she was entitled to examine pursuant to § 1912(c).  She alleges that

14   the Agency improperly withheld, and that she did not receive until filing this action, the following:

15   (1) the San Leandro Police Department Report dated January 22, 2007; (2) the Children's Hospital

16   medical examination report dated January 16, 2007; (3) tapes and transcripts of the CALICO

17   interview of J.H. held on December 20, 2006; and (4) the December 19, 2006 written statement of

18   J.H.'s school principal.  *See* FAP ¶¶ 55-59.

19        Respondents assert that the San Leandro Police Department report; tapes or transcripts of

20   CALICO or other interviews of J.H.; Isaacson's statement; and the Children's Hospital report were

21   never filed with the Juvenile Court.  As such, Petitioner had no statutory right under ICWA to view

22   those documents.  *See* 25 U.S.C. § 1912(c).  Petitioner submits no evidence to refute this.  To the

23   contrary, Petitioner herself seems to rely elsewhere in her Motion for Summary Judgment on the

24   very fact that these documents were never submitted to the Juvenile Court.  *See* Pet'r MSJ at 18

25   (arguing that the disposition was unsupported by clear and convincing evidence because "the only

26   evidence received by the Juvenile Court in making its determination were the accusation of the

27   school Principal . . . and the testimony of the Tribe's expert"); *id.* at 21-22 (arguing that she was

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

denied effective assistance of counsel because her attorney never introduced into evidence the San Leandro Police Department's investigation results, the CALICO interview transcript, or the January 16, 2007 medical examination results).  There being no dispute as to this fact, the Court concludes that Petitioner's ICWA rights under § 1912(c) were not violated by the Agency's failure to provide her with documents never submitted to the Juvenile Court.

With respect to Petitioner's argument that the Agency repeatedly filed its reports the day of the hearing, often at the courthouse, Respondents argue that the Alameda County Juvenile Court Rules provide that detention reports and uncontested jurisdiction hearing reports are timely if filed on the day of the hearing, and that the January 2, 2007 jurisdiction report was therefore timely under the local rules.  However, the local rule about uncontested jurisdiction hearing reports does not excuse untimely service of subsequent disposition reports.

Although the Court finds that a disputed issue of fact may exist as to exactly when Petitioner received access to each of the Agency's reports, the Court finds no dispute as to the fact that Petitioner was given access to all reports filed with the Juvenile Court upon which decisions concerning J.H. were made.  Given that § 1912(c) merely guarantees the right to examine reports filed with the Juvenile Court but contains no temporal requirement for *when* an Indian parent must be given such access, and given that Petitioner was never denied access to any reports filed with the Juvenile Court, Petitioner has failed to set forth evidence supporting her § 1912(c) claim.  Even assuming violation of Petitioner's § 1912(c) rights, the Court concludes that any failure to provide Petitioner timely access to the reports and documents amounted to harmless error, for the reasons discussed above in the context of Petitioner's ineffective assistance of counsel claim.  Even if the documents were not provided in a timely manner, Petitioner has had them in her possession since at least the filing of this federal action, and because her parental rights have not been terminated, she has had opportunity to present the evidence to the Juvenile Court at any of the ongoing six month status reviews for the past several years.  Petitioner herself has chosen not to do so.  The Court therefore GRANTS Respondents' motion for summary judgment on count III.

### 6.  Section 1912(d) -- Insufficient Efforts to Prevent Breakup of the Family

41

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1       Pursuant to ICWA § 1912(d), "[a]ny party seeking to effect a foster care placement of . . .

2 an Indian child under State law shall satisfy the court that active efforts have been made to provide

3 remedial services and rehabilitative programs designed to prevent the breakup of the Indian family

4 and that these efforts have proved unsuccessful."  25 U.S.C. § 1912(d).  The "active efforts"

5 standard for Indian children has been incorporated into WIC § 361.7(a).  The Federal Guidelines

6 define "breakup of the Indian family" as circumstances in which the Indian parent is "unable or

7 unwilling to raise the child in a healthy manner emotionally or physically."  *In re Crystal K.*, 226

8 Cal. App. 3d 655, 667 (1990) (citing 44 Fed. Reg. 67592 (Nov. 26, 1979), Guideline D.2,

9 Commentary).  Petitioner's fourth cause of action alleges that the Superior Court applied the wrong

10 legal standard at the January 2, 2007 and April 5, 2007 hearings, requiring only "reasonable

11 efforts" rather than "active efforts," and also challenges the adequacy of the Agency's remedial

12 efforts at each stage of J.H.'s dependency proceedings.  Both parties move for summary judgment

13 on count IV.

14       Neither ICWA nor its California counterpart defines "active efforts."  *See* 25 U.S.C. §

15 1912(d); WIC § 361.7(b) ("What constitutes active efforts shall be assessed on a case-by-case

16 basis.").  Whether active efforts were made is a mixed question of law and fact to be determined by

17 reference to the record.  *In re K.B.*, 173 Cal. App. 4th at 1286.  While "no pat formula exists for

18 distinguishing between active and passive efforts," the following is a useful guideline:

19         Passive efforts are where a plan is drawn up and the client must develop his or her
20         own resources towards bringing it to fruition.  Active efforts . . . is where the state
        caseworker takes the client through the steps of the plan rather than requiring that
21         the plan be performed on its own.  For instance, rather than requiring that a client
        find a job, acquire new housing, and terminate a relationship with what is perceived
22         to be a boyfriend who is a bad influence, the Indian Child Welfare Act would
        require that the caseworker help the client develop job and parenting skills
23         necessary to retain custody of her child.

24 *Id.* at 1287 (internal quotation marks and citations omitted).  Furthermore, "active efforts" must be

25 "made in a manner that takes into account the prevailing social and cultural values, conditions, and

26 way of life of the Indian child's tribe," and must "utilize the available resources of the Indian

27 child's extended family, tribe, tribal and other Indian social services agencies, and individual

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   Indian caregiver service providers."  WIC § 361.7; *accord* U.S. Dep't of the Interior, Bureau of

2   Indian Affairs ("BIA"), Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.

3   Reg. 67582, § D.2 (Nov. 26, 1979).  A finding that active efforts were made must be supported by

4   clear and convincing evidence.  *In re Michael G.*, 63 Cal. App. 4th 700, 712-13 (1998).

5          Petitioner seeks to invalidate all three orders based on the Agency's insufficient efforts to

6   prevent breakup of J.H.'s Indian family.  Petitioner first asserts that the Juvenile Court employed

7   the wrong legal standard at the January 2, 2007 jurisdictional hearing and the April 5, 2007

8   disposition hearing.  For several reasons, the Court is not persuaded.  First, Petitioner's argument

9   ignores the fact that the Agency was unable to provide Petitioner or her son with services until the

10  minor became a dependent of the court, which did not occur until the jurisdictional hearing.  The

11  Court finds it implausible that Congress intended § 1912(d) to foreclose the Juvenile Court from

12  being able to place an at-risk minor in protective custody.  *See In re A.A.*, 167 Cal. App. 4th 1292,

13  1318-19 (2008) ("ICWA and . . . California's statutory law address the issue of an Indian child's

14  placement separately from the issue of active efforts."  (citing 25 U.S.C. § 1912(d); WIC §

15  361.31)).

16         Second, the sheer fact that the Juvenile Court used the term "reasonable efforts" does not,

17  on its own, establish prejudicial error.  The California Court of Appeal has held that "the standards

18  in assessing whether 'active efforts' were made to prevent the breakup of the Indian family, and

19  whether reasonable services under state law were provided, are essentially undifferentiable."  *In re*

20  *Michael G.*, 63 Cal. App. 4th at 714; *see also In re Adoption of Hannah S.*, 142 Cal. App. 4th 988,

21  998 (2006) ("Active efforts are essentially equivalent to reasonable efforts to provide or offer

22  reunification services in a non-ICWA case.").  The Court therefore must independently look to the

23  record to determine what services were provided and then determine, as a matter of law, whether

24  those services were sufficient under ICWA.  *See In re K.B.*, 173 Cal. App. 4th at 1285 ("Whether

25  [the services provided] constituted 'active efforts' within the meaning of [WIC] section 361.7 is a

26  question of law which we decide independently.").

27

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   The Court's independent review of the record does not support Petitioner's claim that

2   insufficient efforts were made to prevent breakup of the minor's family before ordering J.H.'s

3   foster care placement at the April 5, 2007 disposition hearing.  From December 2006 to April

4   2007, the Agency arranged for the following remediation services to be provided to J.H. and

5   Petitioner in an effort to help them reunify during the one year reunification period: psychological

6   evaluations for both J.H. and Petitioner; weekly individual therapy appointments for Petitioner to

7   assist her in coping with the residual effects of ████████████; individual counseling

8   for J.H. at Kaiser; J.H.'s referral to Therapeutic Behavior Services; family therapy for J.H.,

9   Petitioner, and Archie O.; parenting classes for Petitioner and Archie O.; and one-on-one training

10  for Petitioner and Archie O. regarding ████████████  *See* Fuchs Decl. ¶

11  18 & Ex. E (Referrals).  The Agency also provided a referral for Archie O. ████████

12  ████  at Pacific Forensic Psychological Associates, although the Agency could not pay for the

13  evaluation, and Archie O. refused to pay for it himself.  *Id.*  The types of services provided

14  Petitioner were properly "directed at remedying the basis for the parental termination proceedings,"

15  *In re Michael G.*, 63 Cal. App. 4th at 713, namely, the minor's ████████████

16  ████; his disclosure of ████████████; the

17  mother's denial that ████████ had occurred; and other evidence that J.H. would be at

18  substantial risk of ████████████ if he remained in his mother's home.  Based

19  on the available record, the Court finds there is clear and convincing evidence that the Agency

20  made active efforts to prevent the breakup of the family prior to the Juvenile Court's entry of the

21  Disposition Order, notwithstanding the Juvenile Court's use of the term "reasonable efforts."  *See*

22  *In re K.B.*, 173 Cal. App. 4th at 1287 (finding active efforts where the agency referred the mother

23  to a 90 day in-patient substance abuse program, counseling, and parenting classes, and provided

24  her with homemaking assistance, assistance in finding housing, rent assistance, bus passes).  Here,

25  as in *In re K.B.*, the Agency has clearly done "more than merely draw up a reunification plan and

26  leave the mother to use her own resources to bring it to fruition."  *Id.*

27

28

44

United States District Court
For the Northern District of California

1    For the same reasons discussed above, Petitioner's attempt to invalidate the January 14,

2    2008 Order terminating family reunification services based on inadequate efforts to prevent

3    breakup of the family is unavailing.  The relevant period for determining whether active efforts

4    were made is the twelve month reunification period.  *See In re Michael G.*, 63 Cal. App. 4th at 715-

5    16.  During that twelve month period here, the Agency referred Petitioner to parenting classes at

6    Kaiser, as well as additional classes specifically designed for parents of ████████████████

7    Petitioner attended at least ten sessions of parenting classes, and she and Archie O. attended

8    approximately four or five █████████ parenting classes.  Gormley Decl. Ex. A (Pet'r Dep. 341:8-

9    342:22).  The Agency also provided the mother, the mother's boyfriend, and the minor with family

10   therapy sessions.  Gormley Decl. Ex. A (Pet'r Dep. 342:23-343:9).  The mother was provided with

11   a medical evaluation and a psychological evaluation, as well as individual therapy, all at the

12   Agency's expense.  Fuchs Decl. ¶ 18 & Ex. E; Gormley Decl. Ex. A (Pet'r Dep. 343:10-25, 346:6-

13   11).  J.H. was likewise provided with a psychological evaluation and individualized therapy.  *See*

14   Fuchs Decl. ¶ 18 & Ex. E; Gormley Decl. Ex. A (Pet'r Dep. 345:3-17).  After J.H. was placed in

15   foster care, the Agency further arranged for supervised visits and therapeutic visits between J.H.

16   and his mother.  Gormley Decl. Ex. A (Pet'r Dep. 346:12-20).  The Agency also provided the

17   mother with transportation credit in the form of fuel reimbursement and BART vouchers in order

18   for her to attend her required appointments.  Gormley Decl. Ex. A (Pet'r Dep. 345:18-25, 346:1-5).

19   Furthermore, the Agency complied with ICWA's requirement that active efforts be made to

20   place an Indian child "with a member of the child's extended family, other members of the child's

21   tribe, or other Indian families."  *In re K.B.*, 173 Cal. App. 4th at 1288-89; *see* 25 U.S.C. § 1915(a);

22   WIC § 361.31(c).  Here, the Agency evaluated the possibility of placing J.H. with his half-sister

23   and her boyfriend, but ultimately decided it would not be an appropriate placement because both

24   the sister and her boyfriend were frequently away from the home for work and school and thus

25   unable to provide J.H. with the needed constant supervision.  *See* Gormley Decl. Ex. F at 7; Fuchs

26   Decl. ¶ 15.  The tribal representative agreed with the Agency that, given the severity of J.H.'s

27   problems, the half-sister would not be capable of providing the level of support needed.  Malone

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT

1   Decl. ISO Resp't ¶ 7.  Accordingly, the Tribe "believed that [J.H.'s] placement in a Level 14

2   treatment facility was appropriate and in his best interests."  *Id.*

3        Unlike in *In re Michael G.*, where the parents "received virtually no services" after the

4   initial six month review hearing, here, Petitioner was provided numerous counseling and family

5   reunification services.  *See In re Michael G.*, 63 Cal. App. 4th at 715 (remanding for provision of

6   services for the remainder of the 12 month statutory period).  Furthermore, the Agency took into

7   account the available resources of J.H.'s extended family and concluded that an institutional

8   placement was necessary in light of the severity of his issues.  Based on the totality of the evidence

9   presented, the Court finds that the Agency's provision of various medical and psychological

10  evaluations of both J.H. and Petitioner; family therapy; and individualized counseling and

11  parenting classes for Petitioner satisfied the "active efforts" standard under ICWA § 1912(d).

12  Petitioner's rights under § 1912(d) therefore were not violated.  Accordingly, the Court DENIES

13  Petitioner's motion for summary judgment and GRANTS Respondents' cross-motion for summary

14  judgment on count IV.

15      **IV.    CONCLUSION**

16        For the foregoing reasons, the Court DENIES Petitioner's motion for summary judgment

17  on counts I, II, IV, V, and VI, and GRANTS Respondents' motion for summary judgment on all

18  counts.  The Clerk shall close the file.

19  **IT IS SO ORDERED.**

20

21  Dated: February 13, 2012                    *Lucy H. Koh*

22                                              LUCY H. KOH
                                                United States District Judge

23

24

25

26

27

28

Case No.: 10-CV-02507-LHK
ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND GRANTING
RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT